[No. 1067. Decided December 30, 1893.]

THE STATE OF WASHINGTON, *Respondent*, v. SALVADOR PAGANO, *alias* SALVATOR PICANI, *Appellant*.

HOMICIDE — CIRCUMSTANTIAL EVIDENCE — SUFFICIENCY.

In a prosecution for murder, the defendant is entitled to a discharge where the evidence shows that, by reason of the relations of the defendant with the deceased, he had an opportunity to commit the crime, but that others also had an equal opportunity; that the hatchet with which the crime was probably committed had been used in the fruit stand formerly belonging to defendant, but at the time was in the actual occupancy of another; that defendant had stains, apparently of blood, around his finger nails, upon his arm and upon his shoes, but which were not proved to have been made by human blood; that his conduct on the day following the night of the murder, considered in the light of his personal peculiarities and the circumstances surrounding him, might be better explained upon the theory of his innocence than that of his guilt; and that a piece had been cut from his vest, not, as claimed by the prosecution, for the reason that it was covered with blood stains, but to serve as a patch for his trousers.

*Appeal from Superior Court, Pierce County.*

*John V. Evans*, and *Orra L. C. Hughes* (*Marshall K. Snell*, of counsel), for appellant.

*W. H. Snell*, Prosecuting Attorney, and *Charles Bedford*, for The State.

The opinion of the court was delivered by

HOYT, J. — Appellant was put on trial for murder in the first degree. A verdict of guilty was rendered, motion for a new trial made and determined, and judgment and sentence of death imposed. From this judgment and sentence this appeal is prosecuted. The proceedings by which the case has been brought to this court have been somewhat irregular, and out of the ordinary course, but, upon stipulation of the appellant and the prosecuting attorney, all irregularities have been waived. It, therefore, becomes our duty to pass upon the merits of the case as presented by the record.

At the close of the state's case a motion was interposed by the defendant asking that he be discharged for the reason that the evidence introduced was not sufficient to go to the jury. The motion was denied, and an exception allowed, and such ruling is here assigned as error.

The rules which should govern in passing upon motions of this kind are well understood. All of the evidence introduced by the prosecution should be taken as true, and the criminating facts shown thereby determined. And if such facts and every presumption unfavorable to the defendant that can be founded thereon can reasonably consist with his innocence, the motion should be granted. If they cannot reasonably be explained upon the hypothesis of his innocence, and can only be explained upon the theory of his guilt, it should be denied. At the time the plaintiff rested it had introduced evidence as to some circumstances which tended to cast suspicion upon the defendant as the person who might have committed the crime. The six to which reference is hereafter made were the only ones which rose to the dignity of proof as in any way pointing to the defendant as the actual guilty party.

*First*, That by reason of his relations with the deceased he had an opportunity to commit the crime; *second*, the

hatchet with which the crime was probably committed had the same general appearance as one which had formerly been used in the fruit stand belonging to the defendant, but at the time in the actual occupancy of another; *third*, blood stains, or what appeared to be such, around the finger nails and upon the arm of the defendant; *fourth*, something that appeared like blood stains upon his shoes; *fifth*, his conduct on the day following the night of the murder; and, *sixth*, the vest of the accused with a piece cut therefrom.

Were these facts so inconsistent with the innocence of the accused as to justify his conviction?

As to the first it can have no weight whatever, for the reason that it clearly appeared from the testimony that others as well as the defendant had an opportunity to commit the crime.

As to the second, it is sufficient to say that the proof of the identity of the hatchet was not established beyond a reasonable doubt, and even if it had been, there was no such exclusive ownership and possession of the hatchet shown to have been in the defendant as to exclude a reasonable hypothesis that some other person might have made use thereof in the commission of the crime.

The third was by far the strongest circumstance proven against the defendant, but it does not so clearly and exclusively point to his guilt as to exclude every other reasonable hypothesis. It was not shown beyond a reasonable doubt that the stains were made by the blood of a human being. The testimony might have been sufficient to have warranted such a finding if the plaintiff had not had it within its power to have furnished further proof of such fact, if fact it was. This being the strongest circumstance in the chain relied upon by the plaintiff, it should have made it as conclusive as possible by establishing beyond a reasonable doubt the fact that such stains were caused by the

blood of a human being. No sufficient effort was made in that behalf, and it must, therefore, be held that the fact was not proven as required by the rules of criminal practice. Further, if the stains were caused by human blood, their presence was so explained that no conclusive presumption of guilt could be drawn therefrom. Their existence was accounted for upon fully as reasonable a hypothesis as that upon which the theory of the prosecution was founded. The stains around the finger nails of the defendant were much more satisfactorily accounted for upon the theory that they were made at the time defendant took hold of the dead body than that he would have been so careless as to have allowed them to remain upon his hands during the entire day following the murder, when he had every opportunity to have removed them.

The alleged stain upon the arm lacked a good deal of being satisfactorily proven, and even if it were so proven it might have been made at the time he took hold of the corpse, as above mentioned.

As to the fourth, such stains were too remote, and too easily accounted for upon several theories reasonably consistent with the innocence of the accused, to have any conclusive force against him.

It is only necessary to say as to the fifth that, in interpreting the conduct of the defendant on the day following the murder, all of the circumstances surrounding him, and his personal peculiarities, as disclosed by the evidence, must be taken into consideration, and, when this is done, his acts and demeanor can much better be explained upon the theory of his innocence than that of his guilt.

As to the vest, the theory of the prosecution that such piece had been cut out because blood had been gotten thereon at the time of the murder, in view of the fact that the whole vest could have been so easily destroyed, very nearly approached the ridiculous without any explanation

on the part of the defendant.    Not only was such circum-
stance of little value, if unexplained, but that little was
taken from it by the explanation of the defendant and the
production of the piece cut from the vest as a patch on his
pantaloons.

They can, therefore, furnish no warrant for his convic-
tion.    Not only were all these circumstances explainable
upon some other reasonable hypothesis than the guilt of
the defendant, but there were other circumstances which
appeared in the proofs which went to show that there was
at least an equal probability that another than the defend-
ant had committed the crime.    There was shown absolutely
no motive worthy of the name for the commission of the
'crime by the defendant, and incidentally there crept into
the case the fact that there was something like a motive
existing on the part of another for the killing of the de-
ceased.    This was the state of the case when the motion
on the part of the defendant that he be discharged was in-
terposed, and it follows from what we have said that, in
our opinion, at that time there had not been a single cir-
cumstance proven against him from which even an inference
could be reasonably drawn consistent with his guilt and
inconsistent with his innocence; nor was the case against
him materially strengthened by anything which appeared
in the testimony introduced on the part of the defendant,
or by that in rebuttal thereof.    Taken together, the actions
and bearing of the defendant from the time of his arrest,
and while upon the stand, and all that he said both off and
on the stand, were as consistent with his innocence as could
reasonably be expected under all the circumstances sur-
rounding him.    His so-called admissions and statements
were not admissions, nor were they statements which were
so unreasonable as to justify an unfavorable inference
therefrom, and his testimony taken altogether put his case

in as favorable a light upon the hypothesis of his innocence as could have been reasonably expected.

There was no other testimony, either in the principal case or upon rebuttal, which pointed in the least degree towards the guilt of the defendant, except some alleged contradictions as to the time when he last saw the deceased, which could have been reasonably explained upon the theory of mistake as to the time, or forgetfulness upon the part of the witnesses, and the evidence of the witness Dick as to what he saw on the night of the day before the discovery of the murder. His testimony was objected to as not proper in rebuttal of defendant's case, and most of it was open to objection on that ground, and should have been excluded by the court until some showing had been made by the plaintiff why it had not been introduced at the proper time.

But, regardless of this question, his testimony did no more than to show that the defendant had the opportunity to commit the crime, as to which we have already spoken, and to cast a certain degree of suspicion upon him, and every circumstance testified to could have existed and have been reasonably consistent with the innocence of the accused. Beside, if any force whatever was given to such testimony, it would be upon the theory that the murder was committed in the evening of the day before the body was discovered; whereas, the testimony of the expert witness introduced on the part of the prosecution, and in no manner sought to be explained, was that the murder was committed early in the morning of the same day. Such expert testified that he saw the body about nine or ten o'clock in the evening, and that life had then been extinct from twelve to sixteen hours. Beside, the only theory upon which the testimony of said witness could cut any figure, excepting as tending in some degree to show that

he and the deceased had some words at the time they were passing in front of the witness' house, would have required that the murder should have been committed in a space of time estimated by the witness at half a minute, and without any noise which he could hear, though he was near enough to testify in detail, as to persons with whom he was little acquainted, in the darkness of night, unbroken by moonlight, or, so far as the witness remembered, even by starlight.

In our opinion, the criminating circumstances, if such they can be called, were all reasonably consistent with the innocence of the accused; that the most that was established by them was that there was a probability that he was the guilty party. But it is not the policy of the law that a person should be convicted of crime, especially a capital one, upon the doctrine of probabilities, and, even if it was, at least one other person was by the proofs in the case shown to have been as probably the guilty party as the accused. The only theory upon which the verdict of the jury can be accounted for is, that there was at the time great excitement growing out of the atrocity of the murder, together with the fact that the accused was a foreigner, and, by the jury to some extent no doubt, believed to be of an inferior and vindictive race.

The judgment and sentence must be set aside, and the appellant discharged.

DUNBAR, C. J., and STILES, SCOTT and ANDERS, JJ., concur.