[No. 30297.   Department Two.   April 22, 1948.]

THE STATE OF WASHINGTON, *Appellant,* v. MAX
LEO CRANMER, *Respondent.*[1]

*Phillip Sheridan, C. P. Brownlee,* and *Harold J. Hall,* for
appellant.

*Stanley R. Conroy* and *A. E. Dailey,* for respondent.

BEALS, J.—The defendant, Max Leo Cranmer, was
charged, by information filed April 28, 1947, by the prose-
cuting attorney for Snohomish county,

" . . . with the crime of negligent homicide, com-
mitted as follows, to-wit:

[1]Reported in 192 P. (2d) 331.

"That he, the said Max Leo Cranmer, in the County of Snohomish, State of Washington, on or about the 25th day of February, 1947, operating and driving a motor vehicle, to-wit: a 1935 Dodge panel truck, in a northerly direction along the Snohomish-Woodinville highway, a public highway in said County and State, and being engaged in the discharge of his duties as such driver and operator of said motor vehicle, then and there wilfully, unlawfully and feloniously did operate said motor vehicle while under the influence of or affected by the use of intoxicating liquor and in a reckless manner and with disregard for the safety of others and as a direct and proximate result of the aforesaid acts did drive his automobile into and collide with one Bill Spaulding, a pedestrian, while the said Bill Spaulding was walking parallel to said highway in said county and state, thereby mortally wounding the said Bill Spaulding, from which said wounds said Bill Spaulding did then and there languish and die on the 25th day of February, 1947, . . ."

In due time, the defendant was put upon his trial, a jury was impaneled and sworn, and evidence introduced by the prosecution. The state having rested its case, defendant moved that the cause be taken from the jury and the action dismissed, basing his motion upon the ground that the evidence introduced by the state was insufficient to support a conviction.

After argument by counsel, the trial court granted the defendant's motion and discharged the jury. Later, a written order was entered dismissing the action upon the ground that the evidence introduced was insufficient to prove the crime charged. From this order, the state of Washington has appealed.

Appellant assigns error upon the ruling of the trial court granting respondent's challenge to the sufficiency of the evidence, upon the refusal of the trial court to submit the case to the jury, and upon the entry of the order dismissing the action.

Respondent was charged, by the information, pursuant to Rem. Rev. Stat., Vol. 7A, § 6360-120 [P.P.C. § 295-93], which reads as follows:

"When the death of any person shall ensue within one year as a proximate result of injury received by the opera-

tion of any vehicle by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner 'or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle.

"Any person convicted of negligent homicide by means of a motor vehicle shall be punished by imprisonment in the state penitentiary for not more than twenty (20) years, or by imprisonment in the county jail for not more than one (1) year, or by a fine of not more than one thousand ($1,-000) dollars, or by both fine and imprisonment."

Rem. Rev. Stat., Vol. 7A, § 6360-96 [P.P.C. § 295-43], also has some bearing upon the situation here presented:

"It shall be unlawful to operate or drive any vehicle or combination of vehicles over or along any pavement or gravel or crushed rock surface on a public highway with one wheel or all of the wheels off the roadway thereof, except for the purpose of stopping off such roadway, or having stopped thereat, for proceeding back onto the pavement, gravel or crushed rock surface thereof."

From the evidence introduced by the state, it appears that, during the late afternoon of February 25, 1947, respondent, driving a 1935 Dodge panel truck, left Seattle for Snohomish; that, soon after leaving Seattle, he experienced a "dizzy spell," and stopped near Lake Forest Park. In a short time, he continued on his way, stopping at a tavern on the highway between Woodinville and Snohomish, where he drank "a couple of beers." He then continued his progress toward Snohomish.

Between six and seven o'clock on the evening above referred to, Bernard W. Jenkins and May B. Power (who were called as witnesses by the state) were sitting in Mr. Jenkins' automobile, which was parked in the driveway of Mrs. Power's home, located on the highway between Woodinville and Snohomish, about four miles south of the latter city. The car was parked on the east side of the highway, facing west toward the highway, which, at that point, runs in a generally northerly and southerly direction. In front of Mrs. Power's home, the highway curves toward the west,

the roadbed sloping somewhat in that direction. At this point, the road is also on a downgrade toward the north.

Twenty-two feet of the highway are paved with "black-top," the graveled shoulders adjoining the paved portion of the highway being in good condition.

At the time referred to, it was dark, and the lights of cars passing along the highway were turned on. The pavement was dry, there was no fog in the air, and the sky was somewhat cloudy.

While Mrs. Power and Mr. Jenkins were sitting in the latter's automobile, they observed a young man walking along on the east side of the highway, in a northerly direction, toward Snohomish. Between three and five minutes later, the panel truck driven by respondent passed them, proceeding at ordinary speed, also heading north. Almost immediately after the truck passed, a crash was heard. No other cars passed after the witnesses saw the young man walking along the highway until respondent's car appeared.

Upon hearing the crash, Mr. Jenkins drove from the driveway, turned his car toward Snohomish, and stopped, turning on the lights of the car. Mr. Jenkins and Mrs. Power then walked down the highway. They discovered that a mailbox post in front of the home of Mr. Halvorson, Mrs. Power's neighbor toward the north, the post having been located one hundred feet north of the Power driveway and seven feet east of the paved portion of the highway, had been knocked down, the post lying twenty or thirty feet north of its original position. Some search was made for the mailbox, but, it not being found, the witnesses returned to Mr. Jenkins' automobile.

As they approached the car, they observed respondent's truck coming south along the highway. Respondent turned his truck, parked behind Mr. Jenkins' car, and dismounted. He inquired of the witnesses, "What's wrong around here besides me" or "but me," as the witnesses testified, in rather a facetious manner. The witnesses observed from respondent's breath that it was probable he had been drinking. Mrs. Power testified that "He didn't seem to be quite himself."

Mr. Jenkins told respondent that an automobile had passed and collided with some object, which he assumed was the mailbox post. Respondent made no further remarks, returned to his truck, and proceeded northerly along the highway. As he turned out from behind Mr. Jenkins' car, respondent proceeded well over toward the left of the highway, one of the rear wheels of his truck leaving the pavement.

Shortly thereafter, Mr. Jenkins drove away, and Mrs. Power made a further search for the mailbox, which she found in the middle of the old highway, about seventy-five feet north of the broken post. It appears that, formerly, the highway lay parallel to and somewhat east of its present position.

The following day, Mr. Halvorson discovered the dead body of a young man, lying in a depression between the old and new highways. The office of the state patrol was notified, an investigation was made, and the deceased identified as Bill Spaulding, aged twenty years. The place where the body was discovered was one hundred twenty-three feet eleven inches north of the original position of the mailbox post, and was ten feet east of the new highway, and two feet west of the old highway. At that point, the width of the shoulder of the new highway was seven feet.

A well-defined automobile track indicated that a motor vehicle had left the paved portion of the highway at a point very near the Power's driveway and continued northerly, off the highway, for three hundred sixty feet. At the original position of the mailbox post, the track was seven feet off the highway, and, at a point opposite to where the body was found, the track was four feet off the highway.

Broken glass from headlight lenses and windshield glass was scattered along the highway from the position of the post to a point some distance north of the position of the body, the broken glass being found both on the new and the old grades. Fragments of broken glass were found both north and south of the body.

The officers quickly located respondent's truck in Snohomish, the right side of which showed damage, the right

headlight and the right half of the windshield having been broken. A small piece of cloth was removed from the top of the right front fender, and the rim of the right headlight was removed for examination.

The fragments of glass found on the highway were compared with glass remaining in respondent's truck and appeared to be identical. The same was true of fragments of glass which coincided with the rear-view mirror on respondent's truck.

The fragment of cloth found upon respondent's car was compared with the cloth of the trousers worn by the deceased, and the two were apparently identical.

The chemist of twenty-eight years' experience, who made the examination of the fabrics and glass, examined the rim of the right headlight of respondent's truck and testified that a scientific examination disclosed flesh, blood cells, and one hair.

The surgeon who performed the autopsy on the body of the deceased testified that there were multiple small lacerations on the face, typical of glass cuts; that there were numerous abrasions, a very large one on the right thigh; that both legs and the left arm were broken, and that the deceased died from internal injuries, probably very shortly after the accident.

The sergeant of the Washington state patrol on duty at Everett testified that, upon call, he went to the scene of the accident; that, later, he discovered respondent's damaged truck on a street in Snohomish and talked with respondent, its registered owner; that, on the evening of February 26th, respondent read and signed a statement, written by the witness from statements made by respondent, describing respondent's trip from Seattle to Snohomish. This statement was offered in evidence by the prosecution and, over respondent's objection, was admitted as an exhibit in the case.

In this statement, made the day after the accident, respondent, after stating his name, age, and the purpose of his trip from Snohomish (his home) to Seattle, said that he left Seattle for Snohomish about five o'clock in the afternoon;

that "While returning, I had a dizzy spell, and I stopped my car on the Bothell Hiway near the Lake Forest Park intersection"; that he continued his trip on the Snohomish-Woodinville road; that he "side-swiped a mailbox because I remember hitting it and I proceeded off the side of the road for a short distance after hitting the mailbox"; that he turned around and returned to the site of the mailbox, where he met a man and woman, asking them "if I had hurt anything"; that he was told that he had hit the mailbox, and that he then continued on his way to Snohomish; that "Prior to hitting the mailbox, I had stopped at the Mountain View Tavern, located on the Woodinville Snohomish Road and had a couple of beers"; that, after reaching Snohomish, he called a friend, asking her to come to his apartment because he thought he had glass in his eyes, and that, before his friend arrived, he had fainted. A doctor and respondent's brothers were called. Respondent continued, referring to the deceased, Spaulding, "I don't believe I hit the boy, but I do know and can remember hitting the mailbox."

In his own hand, respondent wrote, following the statement written by Sergeant Hall, "I have read this statement consisting of approximately 3 pages. [signed] Max L. Cranmer."

It appears that the road, along which respondent was traveling, begins to slope down a short distance south of the Power residence, and that, in front of Mrs. Power's house, the road begins to curve toward the west, also on a downgrade. The "cutoff" or new road was constructed in order to avoid a sharp turn to the left, or west, in the old road, the new road making a longer turn. The old road still exists, the space between the two roads being somewhat covered with grass and bushes. The shoulders bordering the main road are graveled and safe for automobile travel.

When Mr. Jenkins and Mrs. Power noticed Mr. Spaulding walking along the highway, he was traveling north along the east side of the road, proceeding with traffic, instead of against it as required by law.

In its oral opinion ruling upon respondent's challenge to the evidence, the trial court stated that the evidence af-

forded a sufficient basis for a reasonable mind to conclude that respondent's motor vehicle did strike the deceased. Upon the record before us, we are of the same opinion.

The body of the deceased was found ten feet east of the pavement and approximately one hundred twenty-three feet north of the original location of the mailbox post. It is impossible to form any definite opinion as to where respondent's car struck the deceased. Of course, Mr. Spaulding might have been carried some distance before being thrown to the ground. It seems unlikely that the deceased could have been carried along on the front of the truck without respondent being aware of that fact.

The record contains no plan or drawing of the locality where the accident occurred, and, without such a diagram, it is somewhat difficult to understand clearly the location of the new and old roads in relation to points referred to in the evidence.

In the recent case of *State v. McDaniels, ante* p. 76, 190 P. (2d) 705, in which this court reversed an order arresting judgment after a verdict of guilty of the crime of negligent homicide by means of a motor vehicle, many matters pertinent to questions 'here present were considered. Of course, the facts in the case cited differ radically from those disclosed by the record before us. We quote from the case last referred to:

"A challenge to the sufficiency of the evidence or a motion having that effect admits the truth of the evidence of the party against whom the challenge or motion is made and all inferences that reasonably can be drawn from such evidence, and requires that the evidence be interpreted most strongly against the challenger or movant party and in the light most favorable to the opposing party. *Kellerher v. Porter,* 29 Wn. (2d) 650, 189 P. (2d) 223, and cases therein cited.

"While it is true that in a prosecution for negligent homicide, under Rem. Rev. Stat., Vol. 7A, § 6360-120, the state has the burden of proving beyond a reasonable doubt that the defendant's negligence was the proximate cause of death, it is not necessary that the state prove gross negligence on the part of the accused; proof of ordinary neg-

ligence is sufficient to support a conviction. *State v. Stevick,* 23 Wn. (2d) 420, 161 P. (2d) 181.

"There was evidence in this case from which the jury could have found that, at the time of the impact, the deceased and her husband were where they had a right to be, at a point *within* the intersection. The testimony of the highway patrolman was to that effect. Assuming, however, that at the time of the impact decedent was a few feet west of the westerly line of the intersection, as testified by Mr. Sutton, that would not necessarily constitute contributory negligence as a matter of law. It was still a question of fact to be decided by the jury, taking into consideration all of the surrounding facts and circumstances.

"In any event, contributory negligence on the part of the injured party is not a defense available to a defendant in a charge of negligent homicide by means of a motor vehicle. *State v. Carlsten,* 17 Wn. (2d) 573, 136 P. (2d) 183; 5 Berry, Automobiles (7th ed.) 545, § 5.367; 8 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) 99, § 538-½. The trial court so instructed the jury.

"The questions which we are required to decide in this case are not whether respondent was, as a matter of fact or of law, guilty of negligence in the operation of the automobile and whether any such negligence was the proximate cause of the decedent's death, but rather whether the evidence was sufficient to warrant the jury in finding that respondent was guilty of negligence, and that his negligence was a proximate cause of the death. . . .

"While the consumption of liquor by the respondent and his failure to have his brakes in proper condition may not in themselves have been the proximate cause, or causes, of the collision, the jury nevertheless had the right to take those facts, so far as shown by the evidence, into consideration as bearing on the question of respondent's negligence in the operation of his automobile at the time and place and under the conditions existing."

In the case cited, direct evidence was introduced before the jury concerning many of the facts in connection with the accident, while in the case at bar the evidence is circumstantial, and the matter is before us only upon the evidence introduced by the state.

Respondent, in his signed statement, admitted that he struck and broke the mailbox post, which was standing seven feet east of the paved portion of the highway, and

that, after hitting the post, he continued to drive off the side of the pavement for "a short distance." In this connection, the jury were entitled to consider the evidence to the effect that an automobile track, which, at the point where the mailbox post was struck was seven feet off the paved portion of the highway, and, at the point opposite to the location of the body was four feet off the highway, showed that the automobile had proceeded, at least in part, off the highway for three hundred sixty feet.

From the evidence, the jury certainly could have found that respondent's car struck and killed Mr. Spaulding.

In its oral opinion, the trial court placed considerable stress upon the fact that there was no evidence as to the exact point where respondent's truck struck the deceased, and that, if that accident had occurred south of the mailbox post, respondent's responsibility for the accident might have been less than if Spaulding had been struck after he had passed the mailbox post.

The witnesses Mrs. Power and Mr. Jenkins testified that they saw the young man walking north along the road, three to five minutes before respondent's truck appeared. The mailbox post was approximately one hundred feet north of Mrs. Power's house. The jury would have been justified in believing, if they deemed the matter important, that in three minutes the deceased would have walked more than one hundred feet and that he was, therefore, struck when at some point north of the post. This would be a reasonable deduction from the evidence introduced by the state.

■ In 23 C. J. S. 651, Criminal Law, § 1139, the rule is stated as follows:

"Whether there is evidence legally sufficient to go to the jury is a question of law for the court, but where there is any evidence, however slight, and the evidence is conflicting or is such that reasonable minds may draw different conclusions therefrom, the question is for the jury."

In the case of *State v. Rubenstein,* 69 Wash. 38, 124 Pac. 135, this court said:

"It is the province of the jury in criminal cases to pass on

the weight and sufficiency of the evidence; and when the court finds there is substantial evidence of a fact, it must be left for the jury to say whether its probative force meets the standard required for a conviction, whether it convinces them beyond a reasonable doubt of the defendant's guilt."

In the case of *State v. Turner,* 95 Utah 129, 79 P. (2d) 46, the court said:

"It is argued that before the trial court can allow the jury to 'speculate upon the guilt of the defendant as to any charge there must be sufficient evidence to establish beyond a reasonable doubt that the charged offense has been committed.' Such is not the law. The law does not require that before any case be submitted to the jury that the judge must satisfy himself beyond a reasonable doubt of the guilt of the defendant. That is for the jury."

In the case of *Paddock v. Tone,* 25 Wn. (2d) 940, 172 P. (2d) 481, a civil action for damages, we said:

"While there is no evidence that respondent was under the influence of intoxicating liquor, testimony of witnesses to the effect that the odor of liquor was upon him, if believed by the jury, could be considered by them in connection with the question of what was a reasonable speed for him to be driving his car under the circumstances. [Citing cases.]"

In the case of *State v. Birch,* 183 Wash. 670, 49 P. (2d) 921, we said:

"Under the section upon which the appellant was charged, § 6362-45 [P. C. § 196-45], 'driving in such manner as to endanger or inconvenience unnecessarily other users of such highway,' constitutes the offense. In view of the known effect of alcohol, it is for the jury to say whether or not its use by the accused, under the circumstances, rendered him incapable of driving, in accordance with the standard fixed in the statute."

In the case of *State v. Hurd,* 5 Wn. (2d) 308, 105 P. (2d) 355, this court affirmed a judgment of guilty, entered upon the verdict of a jury, of the offense of being the operator of a vehicle involved in an accident resulting in injury to a person, and failing to stop and render aid. The evidence was entirely circumstantial. In the course of the opinion, after quoting from 8 R. C. L. 226, 227, we said:

"Whether circumstantial evidence tending to connect appellant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of appellant's guilt, was a question for the jury, and not for the court.

" 'The weight of the evidence, whether direct or circumstantial, is a matter for the jury. When the evidence is of the latter kind, it is for the jury to say whether it excludes every reasonable hypothesis consistent with the innocence of the accused. That it may not be so convincing to us, or may be hard to reconcile in some of its aspects, or may appear in some of its features to refute or negative guilt, or to cast doubt thereon, will not justify the court in setting aside the verdict of the jury.' *Allen v. State,* 26 Ariz. 317, 323, 225 Pac. 332."

In the case of *State v. Hurd,* 5 Wn. (2d) 308, 105 P. (2d) 59, this court affirmed a judgment of guilty, entered upon the verdict of a jury, of the offense of operating a motor vehicle while under the influence of intoxicating liquor. In the course of the opinion, we stated:

"We are therefore of the opinion, and now hold, that the phrases 'under the influence of' and 'affected by,' as employed in the statute, have the same significance, import, and breadth of meaning."

Respondent argues that, to find respondent guilty upon the evidence introduced by the state, the jury would necessarily "go beyond the evidence," and that the evidence amounts to no more than a mere scintilla from which inferences might be drawn, and, in view of the presumption of innocence, would not afford a sufficient basis for a verdict of guilty.

Respondent also argues that, where the evidence is without dispute or contradiction, it is the duty of the court to determine, as matter of law, whether or not there has been a crime committed, citing *Pitts v. State,* 19 Ala. App. 559, 99 So. 51. In the case cited, the court of appeals of Alabama reversed a conviction of violation of the prohibition law, holding, in effect, that the undisputed evidence showed that the defendant was not guilty of the crime of which he was convicted.

■ As above stated, it is the duty of the trial court, in passing upon such a question as was here presented by respondent's challenge to the sufficiency of the evidence introduced by the state, to determine whether or not the evidence is sufficient to carry the case to the jury. The court's duty extends no further. In passing upon such a challenge, the trial court merely determines whether or not the evidence before the jury is sufficient to warrant the court in submitting to the jury the question of the guilt or innocence of the defendant.

■ Respondent also argues that the lack of any evidence as to the point on the highway where respondent's truck collided with the deceased, constitutes a fatal defect in the state's evidence. We do not agree with this contention.

We hold that the evidence introduced by the state was sufficient to carry the case to the jury, and that the trial court erred in granting respondent's motion to take the case from the jury, and dismiss the action upon the ground of failure of proof.

The order appealed from is, accordingly, reversed, and the cause remanded to the superior court for further proceedings.

MALLERY, C. J., STEINERT, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—The judgment should be affirmed under rule announced in *State v. Pagano*, 7 Wash. 549, 35 Pac. 387.