THE STATE OF WASHINGTON, *Respondent,* v. GEORGE H. EIKE, *Appellant.*\*

*Lester Stritmatter,* for appellant (appointed counsel for appeal).

*Herbert E. Wieland* and *August F. Hahn,* for respondent.

HALE, J.—It was a tragic end to a pleasant day. Patricia Oja, with her mother and aunt, Sally and Suoma Oja, had left home in Ilwaco that morning of October 16, 1965, to go shopping in Longview. The three, with Patricia driving,

\*Reported in 435 P.2d 680.

were returning on Highway No. 401 in a 1964 Chevrolet in the early evening. It was dark, raining, and slightly foggy on the highway when, near the town limits of Naselle, the Oja car, moving in a southerly direction around a broad sweeping curve to the left, was struck head on by the car driven by defendant George H. Eike. In the terrific impact, Sally and Suoma Oja were killed, but Patricia lived to describe the accident in court.

Highway No. 401, in the area of the collision, had a smooth, newly paved, 2-lane surface of black asphalt free of chuckholes, and had been freshly marked with a white center line and a white line at each edge. Wide shoulders flanked each side of the highway.

Defendant Eike, alone in his 1960 Oldsmobile, was driving northerly along Highway 401, rounding a gradual curve to his right when his car smashed head on into the Oja car. He estimated his speed at 45 to 50 miles per hour; Patricia Oja estimated hers at not over 40 to 45 miles per hour. In the impact, the defendant received serious injuries and was taken to the hospital. He thought he was on his side of the road, he says, remembering only the head-on collision and virtually nothing of what happened afterwards.

Trooper Elmer Roloff of the Washington State Patrol, arriving at the scene about 70 minutes after the collision, said that he interviewed the defendant in the hospital October 19th, 3 days later, and, referring to their conversation, he testified:

> As near as I can recall, he stated he had gotten up around noon; that he had his breakfast or lunch; that he had been in the vicinity of Naselle most of the afternoon. That he had consumed five bottles of beer plus one drink of whiskey; that he had attempted to visit his son, who was with his ex-wife in Chinook; that he had this accident. . . . He said his automobile was fine mechanically. He didn't know of anything that was wrong with it. . . . He said he saw the lights of the oncoming car and that they did not bother him.

The officer also said that defendant told him he had not eaten dinner that evening, but defendant testified he had no

recollection of such a conversation. Defendant testified that he had had a total of two bottles of beer all of that day preceding the accident and no whiskey. Defendant suffered a fractured jaw, a throat laceration and a broken arm.

All physical evidence at the scene as observed by Trooper Roloff showed the accident took place in Miss Oja's southbound lane of traffic. None of it indicated the accident could have been in defendant's northbound lane. Trooper Roloff said each vehicle suffered heavy and practically identical damage to the left front end, and that the right front headlight and fender of each car was unscathed. Radiators, batteries and everything else were smashed. Debris, consisting of dirt, parts of the grill work and battery parts, all were found in the southbound lane and none in defendant's northbound lane. The officer described a large gouge mark in the pavement made by the collapsed left front suspension of the Oja car when it fell to and scraped along the highway as it was driven backward by the force of the impact. This gouge mark was entirely in the Oja southbound lane.

Patricia Oja, the driver, testifying that she remained conscious after the accident, said she was always in her own southbound lane and described the impact in her testimony:

> I saw the headlights of a car coming in the distance. I knew there was a car coming. The next thing I knew he was right in front of us and hit us.

She repeated that, "He was just right square in front of me too."

Obviously the proof showed a head-on collision, with substantial evidence to support a finding that the defendant was driving on the wrong side of the center line.

The prosecuting attorney for Pacific County filed two counts of negligent homicide against defendant under RCW 46.61.520 (a recodification of Laws of 1961, ch. 12, § 46.56.040, p. 381), which states:

> (1) When the death of any person shall ensue within one year as a proximate result of injury received by the

driving of any vehicle by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle.

Defendant's main contentions of error are directed to the information and the court's interpretation of the negligent homicide statute. Each count, the first relating to the death of Sally L. Oja, and the second to Suoma Oja, sets forth the three methods described in the statute, alleging that the defendant caused the deaths in that he "did wilfully, unlawfully and feloniously operate his motor vehicle while under the influence of intoxicating liquor, or in a reckless manner, or with disregard for the safety of others on Public Highway 401."

At the close of plaintiff's case, the trial court granted defendant's motion for a dismissal of (1) driving while under the influence of intoxicating liquor, and (2) driving in a reckless manner. The jury by its verdict, therefore, found the defendant guilty of the remaining charge in each count of negligent homicide, *i.e.*, by driving a motor vehicle "with disregard for the safety of others on Public Highway 401." Defendant appeals the judgment and sentence entered on the verdict of 20 years' confinement on each count, the terms to run concurrently.

The assignments of error center upon the giving of one instruction and the refusal to give another, but the basic point in issue is whether, under the negligent homicide statute, the phrase "with disregard for the safety of others" is included in the offense of driving in a reckless manner and, when the court dismissed the reckless driving charge, did it thereby necessarily dismiss the charge of driving with disregard for the safety of others. Defendant argues that our statute defines but two and not three ways of committing negligent homicide, *i.e.*, (1) driving while under the influence of or affected by intoxicating liquor or narcotic drugs, and (2) operating in a reckless manner or with disregard for the safety of others.

Arguments on appeal concerning these issues came before the trial court with reference to instruction No. 6 which the trial court gave as follows:

As to the charge in the Information, to operate a motor vehicle with disregard for the safety of others, means just what the words imply.

and defendant's requested instruction No. 6, which the court refused, as follows:

As to the third charge in the information, to operate a motor vehicle with disregard for the safety of others means what the words imply, such a disregard of consequences as to evince or show a willingness to perpetrate injury to another or to take known chances of so doing.

The negligent homicide statute has been on the books since 1937, being first enacted in Laws of 1937, ch. 189, § 120, p. 911 (7A Rem. Rev. Stat. § 6360-120), and subsequently re-enacted in identical language in Laws of 1961, ch. 12, § 46.56.040, p. 381, and Laws of 1965, Ex. Ses., ch. 155, § 63, p. 2314 (RCW 46.61.520). Since 1937, the same language has been construed and applied in a number of cases and in this appeal leaves us with the question of whether it denounces but two rather than three kinds of driving derelictions. Necessarily included in the problem is whether, without a request to do so, the court was bound to instruct the jury that ordinary negligence under the circumstances was insufficient to sustain a conviction.

Adverting to first things first, we note that the plain language of the statute appears to define three distinct ways of committing the offense: (1) Driving while under the influence of or affected by intoxicating liquor or narcotic drugs; (2) driving in a reckless manner; and (3) driving with disregard for the safety of others.

■ In *State v. Partridge*, 47 Wn.2d 640, 289 P.2d 702 (1955), this court made a comprehensive review of the principal cases dealing with the negligent homicide statute, and, after trying to reconcile some seemingly irreconcilable comments, gave what now appears to be as definitive a statement as the statute is susceptible of. We said, in *Par-*

*tridge,* that the statute defines not two, but three separate ways of committing negligent homicide:

> The elements of that crime are: death within one year as the result of the operation of a motor vehicle by any person while (1) under the influence of or affected by intoxicating liquor or narcotic drugs, or (2) by the operation of any vehicle in a reckless manner, *or* (3) *with disregard for the safety of others.* (Italics ours.) *State v. Partridge, supra,* at 645.

*Partridge* also clarified the law on another point pertinent to the instant case by requiring something more than mere negligence to sustain a conviction. Although we had earlier said in *State v. McDaniels,* 30 Wn.2d 76, 190 P.2d 705 (1948), in a prosecution for negligent homicide, "[I]t is not necessary that the state prove gross negligence on the part of the accused; proof of ordinary negligence is sufficient to support a conviction. *State v. Stevick,* 23 Wn. (2d) 420, 161 P. (2d) 181," the *Partridge* case recedes from this position and holds that ordinary negligence is insufficient. Referring directly to the negligent homicide statute, in *Partridge* we said, at 645: "We are satisfied that a finding of ordinary negligence is not sufficient to support a conviction under the act."

Our study of negligent homicide statutes shows RCW 46.61.520 to be unique among the states. Research has disclosed no other statute couched in indentical language. This gives the *Partridge* case an even weightier than ordinary impact for it represents the last definitive statement of this court on the interpretation of a statute which, although dealing with a subject matter common to all states of the Union, is phrased in language peculiar to this jurisdiction. Thus, we have no major or minor views to turn to as an aider in interpretation and, accordingly, think it best to adhere to the *Partridge* rationale.

■ As *Partridge* says, ordinary negligence will not support a conviction of negligent homicide. And if one drives a motor vehicle upon the public highways with disregard for the safety of others, this implies an aggravated kind of negligence or carelessness, falling short of recklessness but

constituting a more serious dereliction than the hundreds of minor oversights and inadvertences encompassed within the term "negligence." Every violation of a positive statute, from a defective taillight to an inaudible horn may constitute negligence under the motor vehicle statutes, yet be unintentional, committed without knowledge, and amount to no more than oversight or inadvertence but would probably not sustain a conviction of negligent homicide. To drive with disregard for the safety of others, consequently, is a greater and more marked dereliction than ordinary negligence. It does not include the many minor inadvertences and oversights which might well be deemed ordinary negligence under the statutes.

■ Accordingly, it was not error for the court, in instruction No. 6, to instruct that "to operate a motor vehicle with disregard for the safety of others, means just what the words imply." But in the absence of a specific request for such an instruction, the court was not obliged to go beyond the language of the statute and declare that to drive with disregard for the safety of others also means a negligence greater than ordinary negligence. Defendant not having requested such an instruction to that effect, it was not error to omit such an instruction.

That there was evidence to support a conviction of driving with disregard for the safety of others is apparent. There was evidence that showed defendant to be driving at 45 to 50 miles per hour on a dark, wet, but well-marked highway, rounding a sweeping curve on the wrong side of the road at night, into a head-on collision with an oncoming car; it is clear from this proof that the jury was warranted in concluding he was then driving with disregard for the safety of others.

We have considered defendant's requested instruction amplifying the court's instruction No. 6, but find it is not a correct statement of the law and was properly refused.

Affirmed.

HILL, WEAVER, and HUNTER, JJ., and DENNEY, J. Pro Tem., concur.

HAMILTON, J. (concurring in part and dissenting in part) —I concur with the majority view that this court, in *State v. Partridge,* 47 Wn.2d 640, 289 P.2d 702 (1955), held that the offense of negligent homicide, as defined in RCW 46.61.520, could be committed in three rather than two ways, *i.e.,* by operating a motor vehicle (1) while under the influence of or affected by intoxicating liquor or narcotic drugs, (2) in a reckless manner, or (3) with disregard for the safety of others. Also, I agree with the majority to the effect that the *Partridge* case stands for the proposition that the third method of commission contemplates something more than ordinary negligence. Furthermore, it would appear to me that the majority's determination that the *Partridge* interpretation of RCW 46.61.520 should continue to be the law, until changed by the legislature, is justifiable despite the logic of Judge Donworth's dissent. Particularly would this appear to be so when one considers the fact that between 1937 and the *Partridge* decision ordinary negligence was deemed sufficient to sustain a charge under the statute, and that the delimit of *Partridge* became the law and has remained the law since 1955.

In this latter respect, I feel that trial courts and trial counsel, as well as the public, are entitled to some stability in this court's interpretative decisions, especially when such are en banc decisions and reflect the unanimous agreement of the members of the court as does the *Partridge* opinion. Certainly, this court should not periodically, and without the most compelling and convincing of reasons, innovate changes in a former and otherwise established decision placing a given construction upon a given statute simply because the statute may be susceptible of more than one logical interpretation. If, however, this case is to form and constitute the platform for alteration of the *Partridge* holding, it would be my thought that reasonable judicial consistency would suggest a reversion to our former holdings whereby we determined that ordinary negligence would support a negligent homicide charge under the pertinent statute. This, however, a majority of this court is

not willing to do, thus leaving *Partridge* intact, albeit with the phrase "disregard for the safety of others" dangling in the rather obscure area of something greater than ordinary negligence yet less than recklessness.

Assuming then the validity of the majority's position up to this point, I am, nevertheless, unable to agree with its view that instruction No. 6, as given by the trial court, adequately, fairly, and constitutionally submitted the issue of appellant's felonious culpability to the jury. As pointed out by Judge Donworth, in his dissent, the instruction as given leaves it entirely up to each juror to place his own independent and unrestrained interpretation upon the words "disregard for the safety of others" in the light of the evidence as the individual juror sees it. If in the context of the *Partridge* concept of the negligent homicide statute, the phrase "disregard for the safety of others," standing as a yardstick of proscription in a criminal statute and/or alone in a criminal instruction, is not unconstitutionally vague, it is most assuredly insufficient by itself to intelligibly carry to a jury of laymen the proposition that the conduct proscribed by the third phase of the pertinent criminal statute must amount to some form of misbehavior which is less than reckless but greater than ordinary negligence. In my view, something more must be added to accomplish the objective of a proper jury instruction.

It follows, then, that I cannot subscribe to the majority holding that appellant's proposed instruction No. 6 is so erroneous as to warrant the trial court's complete refusal thereof. If nothing else could be said of the proposed instruction, it did emphatically and markedly emphasize the desirability and necessity for an instruction clarifying the grey area lying between the legal concept of ordinary negligence and reckless behavior. Particularly is this so when one contemplates the generality of the statutory phrase in question, the fact that appellant was charged with "negligent homicide," and the fact that the trial court by the instructions specifically included and then withdrew from the jury the allegations that appellant operated his car in a

reckless manner. These factors, it seems to me, fairly imposed upon the prosecuting attorney, if not the trial court, an obligation, if not a duty, to undertake to propound an instruction which more clearly described the nature of the pertinent conduct proscribed by the negligent homicide statute as interpreted by *Partridge*. Otherwise, the trial court should have given appellant's proposed instruction, rather than leave the jury without meaningful guidance concerning the alleged criminal misconduct it was about to consider.

Finally, it seems to me that the majority pointedly avoids undertaking to spell out a practical and reasonably descriptive definition of the phrase "disregard for the safety of others" as that phrase is used in the third phase of the negligent homicide statute under *Partridge*. This may be a necessary result of its disposition of the case, but, unfortunately, the minimal guidelines the majority suggests would seem to do aught but pile vagueness upon vagueness, and leave the trial bench, the trial bar, and trial jurors without a workable yardstick by which to measure the proscribed conduct. In this vein, and without prolonging this opinion by further discussion, it is my view, in substance, that a minimally acceptable definition and jury instruction would be one which would define ordinary negligence, advise the jury that the state must prove greater than ordinary negligence, and assert that the phrase "disregard for the safety of others" contemplates an act or omission on the part of the accused which, by its character and the surrounding circumstances, manifests a heedless indifference to the probability that injury to others will flow from such conduct.

For the reasons stated, it is my opinion that the convictions now before us should be set aside and the cause remanded for a new trial with appropriate instructions.

FINLEY, C. J. (dissenting)—Considering the shocking significance of currently mounting fatality and other highway

accident statistics, there is little doubt in my mind that highway traffic safety is the number one social problem of our times.[1] The automobile, is, incongruously, both a boon and a behemoth in our contemporary culture. Whether it is more of the one or the other is dependent upon its use by its variegated users, as well as upon appropriate social control and regulation promulgated by organized society relative to such uses and users. If the automobile is not regarded as aforementioned, it should be—not only by the motoring public but by all public officials vested with any responsibility and authority having to do with highway traffic safety. With these points of reference in mind, it should be noted that the legislature, under the police power of the state, is vested with authority which could be well nigh plenary and should be so recognized judicially. Thus I have no problem agreeing with the majority that the legislature has the police power, and has duly exercised it, to proscribe as criminal three categories of conduct in an effort to regulate and control the presently well-nigh uncontrollable destruction of life, limb, and property on the highways of this state. Two dissenting opinions in this appeal seem to me to indulge in something akin to two intellectual tempests in somewhat separate teapots as to whether it is legislatively, legalistically, or conceptually possible to es-

---

[1] Some statistics gathered by the American Bar Association Standing Committee on Traffic Court Program can be summarized as follows: Of the 200 million people living in the United States, 102 million are licensed drivers. There are 96,100,000 motor vehicle registrations. Every year there are 53,000 deaths and 1,900,000 disabling injuries as a result of automobile accidents. The American Bar Association's preliminary estimate is that these accidents cost $10 billion per year. A recent American Bar Association brochure makes the following comment:

The National Highway Safety Bureau has said that auto crashes are close to being the nation's largest health problem. "The present casualty rates listed in the National Health Survey show that highway crashes cause 10,000 injuries each day, 1,000 deaths each week, and at least one billion dollars in property damages each month," according to a NHSB spokesman. The Bureau has pointed out that vehicle crashes account for eight million bed days a year in hospitals and that auto collisions are the leading cause of death for teenagers and young adult males today.

tablish more than just two, namely three, categories of conduct as penal and beyond the pale for social acceptance. This, of course, is speaking of social acceptance in terms of the use of the automobile and the network of highways constructed with great engineering skill and at great public expense potentially for the safe use-utility and enjoyment of the motoring public.

The statute involved in this case is no different from numerous others as to which this court has been called upon to supply some reasonable and rational explanation by way of judicial interpretation. It seems apparent to me that the statute attempts to list in the disjunctive three different categories of conduct on the highways as subject to firm, if not drastic, penalization. The problem in this case is simply one of definition or of distinguishing with reasonable and rational clarity between category two (driving in a reckless manner), and category three (driving with disregard for the safety of others). I am convinced that the key to the problem lies perhaps very simply in some legalistic conceptualism which, for lack of better nomenclature, I would refer to as (a) volitional recklessness, and (b) involitional recklessness.

Putting it another way, the third category simply proscribes any course of conduct involving such a convincing or high probability of danger to other users of the highway as to be in disregard for the safety of others both in fact and in law *i.e.*, conduct which is criminal per se.

The basic defect in the majority opinion, and one I cannot accept and live with in good conscience, lies in its failure or refusal to employ, and I may say quite traditionally and appropriately, judicial interpretation and explanation as to the third category posed by the legislature in the statute.

In my judgment, the third category envisaged herein, *i.e.*, the "criminal per se" category, is not simply a more or a less stringent version of the second category, involving recklessness. The recklessness category focuses on the intent of a driver rather than on the circumstances of a

resulting accident. A driver could be convicted of negligent homicide if his testimony or that of other witnesses indicate criminal intent in relation to recklessness. On the other hand, the criminal per se category focuses on the fact pattern or circumstances of an accident. A driver could be convicted of negligent homicide even though there is no evidence available concerning his intent, provided his conduct or actions clearly indicate criminal negligence. There is, of course, a close similarity between this conduct category and the first conduct category proscribed by the statute, namely driving under the influence of intoxicating liquor or narcotic drugs, as to which intent—realistically—is at least somewhat irrelevant.

Following the foregoing resolution of one crucial problem in this case, the focus must then fix upon the corollary matter of instructions given, or not given, by the trial court. In this respect, it is my view that instruction No. 6, as given, was grossly inadequate. Simply saying that the words of the statute "mean just what they say" was, I think, utterly meaningless and an exercise in judicial futility of no utility or guidance whatsoever to the jury confronted with the problem of making a decision in this case. By the same token, the instruction, meaningless as I think it was, either disregarded or overlooked completely any and all rights of the defendant—I might say improperly if not unconstitutionally so. The defendant's requested instruction No. 6 was little—if any—better than instruction No. 6 as actually given by the trial court. I am convinced that a new trial should be granted; and in my best judgment, a new instruction could and should be given legally, appropriately, and constitutionally consistent with the function of this appellate court along the lines expressed hereinbefore as to the third category posed in the statute by the legislature.

For the reasons stated above, I dissent.

DONWORTH, J. (dissenting)—The majority hold that appellant was properly convicted of operating a motor vehicle

"with disregard for the safety of others," and thus proximately causing the death of two persons. They affirm the judgment and sentence of the trial court by which appellant will be confined in the state penitentiary for a total maximum period of 40 years.

In my opinion, appellant was erroneously convicted and sentenced because the legislature, in enacting RCW 46.61.520 (which defines the elements of the crime with which he was charged), intended to divide it into two (and *not* three) parts by providing that when the death of any person shall ensue within 1 year as a proximate result of an injury received by

> (1) . . . *the driving of any vehicle* by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or [2] by *the operation of any* vehicle in a reckless manner or with disregard for the safety of others, . . . . (Italics mine.)

then the person so operating the vehicle shall be guilty of negligent homicide with a motor vehicle.

I realize that there is dictum to the contrary, in *State v. Partridge*, 47 Wn.2d 640, 289 P.2d 702 (1955), on which the majority rely, which will be discussed later herein.

In this case this court is, for the first time, confronted with a conviction based on the negligent homicide statute, in which the trial court has determined, as a matter of law, that the state's evidence would not support a conviction under either of the first two elements of the offense: (1) driving while under the influence of intoxicating liquor, or (2) reckless driving—but would support a conviction under an alleged third element (operating a vehicle with disregard for the safety of others).

In my opinion, in order to arrive at a correct solution to the problem presented in this case, it is necessary to thoroughly review the legislative history of the statute involved and our prior decisions dealing with the subject.

In 1923, the Washington State Legislature first enacted a statute making unlawful the operation of a motor vehicle on the public highways in a "reckless manner." Laws of 1923, ch. 122, § 2, p. 329. That statute provided that:

For the purpose of this section, to drive in a reckless manner shall be construed to mean the operation of a motor vehicle . . . in *such a manner as to endanger or inconvenience unnecessarily other users of such highway.* (Italics mine.)

Violation of the provision was made a misdemeanor.

In 1927, the statute was altered somewhat, chiefly in the deletion of the provision making violation a misdemeanor, but the definition of the offense remained unchanged. Laws of 1927, ch. 309, § 45, p. 807.

In the same year, the legislature added a second major driving delinquency in Laws of 1927, ch. 309, § 51, providing, in part, that:

It shall be unlawful for any person to operate a motor vehicle upon the highways of this state while under the influence of intoxicating liquor or of any narcotic drug.

Thus, reckless driving and driving while under the influence of intoxicating liquor or narcotic drug constituted the two major driving delinquencies prohibited by statute when, in 1937, the legislature first enacted the forerunner of the present negligent homicide statute,[2] in Laws of 1937, ch. 189, § 120, providing, in part, that:

When the death of any person shall ensue within one year as a proximate result of injury received by the operation of any vehicle by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle.

Also, in 1937, the reckless driving statute was amended to read:

For the purpose of this section to "operate in a reckless manner" shall be construed to mean the operation of a

[2] Prior to this enactment, prosecutions for death resulting from the operation of motor vehicles in violation of the reckless driving and drunk driving provisions were brought under the manslaughter statute. See *State v. Hopkins,* 147 Wash. 198, 265 Pac. 481, 59 A.L.R. 688 (1928); *State v. Ramos,* 159 Wash. 599, 294 Pac. 223 (1930); *State v. Mooney,* 170 Wash. 260, 16 P.2d 455 (1932).

vehicle upon the public highways of this state in *such a manner as to indicate either a willful or wanton disregard for the safety of persons or property.* (Italics mine.) Laws of 1937, ch. 189, § 118, p. 910.

In *State v. Dickert,* 194 Wash. 629, 79 P.2d 328 (1938), the first case to come before this court under the 1937 enactments quoted above, this court held that the words "willful and wanton disregard," used in section 118 in defining reckless driving, could not be lifted from their setting in that section and read into section 120, the negligent homicide provision. It was held that "willful and wanton" disregard for the safety of persons or property was not one of the elements of the crime of negligent homicide as that crime was defined in section 120. Emphasis was given the facts that the words "willful and wanton" did not appear in section 120, and the definition of reckless driving was expressly limited to "purposes of this section" by section 118.[3]

In 1939, a third major driving delinquency was added by Laws of 1939, ch. 154, § 1, p. 454, which provided, in part:

Section 118½. It shall be unlawful for any person to operate a motor vehicle in a negligent manner over and along the public highways of this state. For the purpose of this section to "operate in a negligent manner" shall be construed to mean the operation of a vehicle upon the public highways of this state in *such a manner as to endanger or be likely to endanger any persons or property.* (Italics mine.)

It was further provided that this offense was to be considered a lesser offense than, but included in, the offense of operating a motor vehicle in a reckless manner.

I am convinced that the offense of negligent driving, as defined above, does not comprise an element of negligent homicide. First, it would seem reasonable that, had the legislature intended negligent driving to be an element of

---

[3]By Laws of 1965, Ex. Ses., ch. 155, § 59, p. 2311, the reckless driving statute was recodified as RCW 46.61.500, and was amended to read: "Any person who drives any vehicle in wilful or wanton disregard for the safety of persons or property is guilty of reckless driving," thus omitting the limiting phrase "For the purpose of this section."

negligent homicide by motor vehicle, it would have clearly so provided. It did not. Nor do I feel it reasonable to assume that the legislature, in enacting the negligent homicide statute in 1937, had in mind an offense for which provision was not made until the following legislative session.

In addition, it must be stressed that negligent driving is, by the very statute defining it as an offense, made a lesser and included offense under the reckless driving. See the concurring opinion of Mallery, J., in *State v. Stevick,* 23 Wn.2d 420, 161 P.2d 181 (1945).

In *State v. Forler,* 38 Wn.2d 39, 48, 227 P.2d 727 (1951), this court noted that:

> Rem. Rev. Stat., Vol. 7A, § 6360-120, deals with negligent *homicide,* a crime which may be committed when the death of any person is brought about as a result of the "operation of any vehicle in a reckless manner or with disregard for the safety of others"; while Rem. Rev. Stat. (Sup.), Vol. 7A, § 6360-118½, deals with negligent *driving,* an offense committed when a vehicle is operated "in such a manner as to endanger or be likely to endanger any persons or property." The two are entirely unrelated.

In *State v. Partridge,* 47 Wn.2d 640, 289 P.2d 702 (1955), this court held it to be error, in a negligent homicide case, to charge the defendant with operating the motor vehicle in a negligent manner. The court had previously held, in *State v. Stevick, supra,* that a finding of ordinary negligence would support a conviction under the negligent homicide statute. This ruling was followed in *State v. McDaniels,* 30 Wn.2d 76, 190 P.2d 705 (1948). Both these cases, however, were expressly overruled on this point by *State v. Partridge, supra.*[4]

In my opinion, this much may be deemed settled—that neither a finding of negligent driving, defined in section 118½ (presently codified as RCW 46.61.525—see Laws of 1965, Ex. Ses., ch. 155, § 92) as driving "in such a manner

---

[4]The case of *State v. Cranmer,* 30 Wn.2d 576, 192 P.2d 331 (1948), followed the *Stevick* case on this point, and must likewise be deemed to have been overruled, *sub silentio,* by *State v. Partridge, supra.*

as to endanger or be likely to endanger any persons or property," nor a finding of ordinary negligence will support a conviction of negligent homicide by means of a motor vehicle, even though a death results from injuries sustained by reason of such unlawful operation. In such cases, prosecution must be instituted under the manslaughter statute, RCW 9.48.060.

With this background in mind, I turn to an analysis of the negligent homicide statute itself as presently set forth in RCW 46.61.520. The present statute provides, in part, that:

(1) When the death of any person shall ensue within one year as a proximate result of injury received by the driving of any vehicle by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle.

The language contained in this portion of the present statute is substantially identical to that of the first enactment in 1937.

The legislative scheme seems clear. At the time of the enactment of this provision in 1937, as pointed out earlier, there existed only two major driving delinquencies specifically prohibited by statute: (1) driving while intoxicated, and (2) reckless driving. The operation of a motor vehicle on the public highways in violation of either of these two statutory provisions would constitute an offense in and of itself. If the death of any person results within one year as a proximate result of injury received by reason of such unlawful operation, then the operator is guilty of negligent homicide by means of a motor vehicle.

However, in *State v. Partridge, supra* at 645, this court said, regarding the crime of negligent homicide by means of a motor vehicle, that, under the statute:

The elements of that crime are: death within one year as the result of the operation of a motor vehicle by any person while (1) under the influence of or affected by

intoxicating liquor or narcotic drugs, or (2) by the operation of any vehicle in a reckless manner, or (3) with disregard for the safety of others.

I disagree with the statement in so far as it divides the crime of negligent homicide by means of a motor vehicle into *three* elements. In so doing, however, I do not differ with the result of the *Partridge* case, the holding of which was that a finding of ordinary negligence will not support a conviction of negligent homicide under the act. The statement quoted above was not necessary to the decision in the *Partridge* case, and is, therefore, dictum.

It will be noted that, in addition to the legislative history above set forth, the statute (RCW 46.61.520) itself is divided naturally into two portions by providing that when the death of any person shall ensue within one year as a proximate result of an injury received by

(1) . . . *the driving of any vehicle* by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or [2] by *the operation of any* vehicle in a reckless manner or with disregard for the safety of others, . . . .

then the person so operating the vehicle shall be guilty of negligent homicide with a motor vehicle.

My conclusion, based on the foregoing analysis of the pertinent satutes and decisions of this court, is that there are two, and only two, elements of the crime of negligent homicide by means of a motor vehicle, both being stated in the disjunctive in the statute.[5] The cases cited herein fur-

---

[5]The confusion on this point seems not to have existed in the earlier cases involving negligent homicide by means of a motor vehicle.

In *State v. Dickert, supra,* this court said, at 631: "It will be observed that *one of the elements* of the crime, as defined by this statute, is the 'operation of any vehicle in a reckless manner or with disregard for the safety of others.'" (Italics mine.)

Also significant is an instruction defining "reckless driving" in a negligent homicide case, which received the approval of this court in *State v. Stevick, supra* at 426, in which reckless driving was said to be: ". . . the operation of a motor vehicle in a heedless, careless or rash manner or in a manner indifferent to consequences. *It is a disregard for the safety of persons or property.*" (Italics mine.)

nish ample guidance for instructing the jury on the second element of the offense, reckless driving.

Even were I able to agree with the majority that the operation of a motor vehicle "with disregard for the safety of others" constitutes a separate and distinct offense, I could not agree with the majority's approval of the instruction given by the court (instruction No. 6) which was excepted to by appellant, and which provided that:

> As to the charge in the Information, to operate a motor vehicle with disregard for the safety of others, means just what the words imply.

I could not approve the giving of this instruction any more than I could approve the giving of an instruction, in an appropriate case, that "negligence means just what the word implies," or "due process means just what the words imply."

Appellant's proposed instruction No. 6, which the court refused, stated that:

> As to the third charge in the information, to operate a motor vehicle with disregard for the safety of others means what the words imply, such a disregard of consequences as to evince or show a willingness to perpetrate injury to another or to take known chances of so doing.

The majority dismiss the assignment of error based on the court's refusal of this proposed instruction with the simple statement that the instruction is "not a correct statement of the law and was properly refused." No discussion in the majority opinion enlightens us as to the basis for so holding.

Thus it may be concluded from the majority opinion that "disregard for the safety of others" is conduct which is more culpable than "the many minor inadvertences and oversights which might well be deemed ordinary negligence"; more culpable than driving "in such a manner as to endanger or be likely to endanger any persons or property" (RCW 46.61.525—negligent driving); and less culpable than the "wilful or wanton disregard" which would constitute reckless driving under RCW 46.61.500.

In addition, it must be inferred that this statutory offense is something other than (whether more or less culpable is in no way indicated) "such a disregard of consequences as to evince or show a willingness to perpetrate injury to another or to take known chances of so doing." Yet the majority sustain the trial court's solution of this lexicographer's nightmare, *i.e.* leaving the jury without guidance as to the meaning of the charge and letting each juror determine for himself "just what the words imply." This, in my opinion, is wholly inadequate.

The task of framing a proper instruction would have been somewhat less difficult had the legislature (if it intended "disregard for the safety of others" to constitute a separate offense) either provided a statutory definition of the offense (as was done in the case of *all other offenses*) or set forth the elements of the offense in terms which have an easily ascertainable meaning. But the legislature did neither of these things. Again, I believe the reason that they did not do so is that they never intended "disregard for the safety of others" to constitute a separate offense.

If the majority are determined to continue to take cognizance of an offense which was created by the dicta in the *Partridge* case, it seems to me to be incumbent upon them to provide the courts and the bar with some form of workable standards.

In my opinion, the case should not have gone to the jury on the supposed third element of the crime of negligent homicide. Having dismissed, on the ground of the insufficiency of the state's evidence as to both the elements of driving while under the influence of intoxicating liquor and reckless driving, I think that the trial court should have sustained appellant's challenge to the sufficiency of the evidence as to the information in its entirety.

And in any event, the charge should not have been submitted to the jury under the trial court's instruction No. 6.

For the reasons stated herein, I think that the judgments and sentences should be reversed and the action dismissed.

ROSELLINI, J., concurs with DONWORTH, J.