[No. 29514. Department Two. August 2, 1945.]

THE STATE OF WASHINGTON, *Respondent,* v. GRACE STEVICK, *Appellant.*[1]

[1] Reported in 161 P. (2d) 181.

*Sam L. Levinson, H. Sylvester Garvin,* and *Anthony Savage,* for appellant.

*Lloyd Shorett* and *Attwood A. Kirby,* for respondent.

SIMPSON, J.—The defendant was charged by information with the crime of negligent homicide, committed while driving an automobile on a Seattle street. A trial to a jury resulted in a verdict of guilty. A motion for a new trial was denied, and defendant was sentenced as provided by statute. Defendant has appealed from the judgment and sentence against her upon the verdict.

It is urged that the court erred in the following particulars: (1) In permitting the prosecuting attorney, over the objection of defendant's counsel, to inject incompetent and prejudicial matters into the case; (2) in instructing the jury that they could consider the flight of the defendant from the scene of the accident; and (3) in instructing the jury that proof of negligent driving alone was sufficient to convict the defendant of the crime charged.

The facts relative to the commission of the crime were these: The accident occurred on Airport way in the city of Seattle June 30, 1944. It was a clear dry day. An auto-

mobile driven by Virginia Marshall was proceeding south on Airport way. Riding in the car with her were Arthur Phillips and William Baxter Knight. Miss Marshall was driving at a speed of between six and ten miles per hour on her right side of the street. She saw a car, afterwards identified as the one driven by appellant, approach from the south at "a terrific rate of speed" on its left side of the street. Appellant's car ran into that occupied by Miss Marshall and her companions. The three occupants of Miss Marshall's car were injured and taken to a hospital. Mr. Knight died as a result of his injuries.

Police officers examined the street at the scene of the accident and testified that skid marks indicated that the left tires of the car driven by appellant were well to the west of the center line of the pavement. Counsel for appellant, in their brief, admit that there was sufficient evidence to take the case to a jury.

In order to consider the claim of error on the part of the trial court in allowing the deputy prosecuting attorney to ask certain questions and make certain statements, we set out that portion of the statement of facts in which the questions and statements of the state's attorney appear:

"Q. When you were in Vancouver, B. C., on June 25, 1924, were you not convicted there, *charged with working in a house of prostitution* and charged with vagrancy, and fined $25.00 or 30 days? MR. GARVIN: I object to that. A. No, not— THE COURT: Just a minute. MR. GARVIN: Not proper cross-examination, improper as to form. THE COURT: Overruled. She may answer. A. I was charged with being disorderly and fighting and having trouble with some officers up there, but that wasn't prostitution. . . . Q. You were convicted there of assaulting a police officer. In July, 1924, you were again convicted of vagrancy, weren't you, or *accused of working in a house of prostitution* and fined $25.00? A. In Vancouver? Q. In Vancouver, B. C. A. I never worked in a house of prostitution up there. I was never convicted of that. THE COURT: The question is, were you convicted. You can either say yes or no. MR. GARVIN: The question is further than that, if your Honor please. MR. KIRBY: She can answer yes or no. THE WITNESS: Not of anything like that. . . .

Q. All right, the first time there was June 25, 1924, you were convicted of vagrancy and fined $25.00 or 30 days; is that right? A. It says so. Q. All right, and July 25, 1924, you were again convicted of vagrancy and fined $25.00; is that right? A. I probably was. I got drunk up there a lot of times and got pinched. Q. *But you were not in any house of prostitution during that time?* A. No, I was not. Q. On September 24, 1924, you were convicted of keeping a' disorderly house; isn't that right; and fined $50.00? A. That's when I had the trouble with the officer. Q. *But were you or weren't you convicted of running a disorderly house?* A. Those two are the same date. Q. All right, but you were convicted of both at the same date? A. No, I was not. When I was convicted up there, the way I remember that, was because—was the worst fight I ever had. . . . Q. By any chance, would this be a fact, Mrs. Stevick, that prior to the time of this accident you and Mrs. Baytec had picked these colored soldiers up down near their barracks, starting down toward your rooming house, and had come up Spokane Street, cut the corner here, going on down to your rooming house with the colored soldiers?" (Italics ours.)

Violet M. Baytec was called and testified on behalf of appellant. During her cross-examination, the following occurred:

' "Q. (by Mr. Kirby) On July 11, 1943, you were also convicted as a disorderly person? A. Disorderly conduct. Q. *Accused of working in a house of ill fame?* . . . Q. (by Mr. Kirby) Were you convicted of vagrancy? A. It wasn't vagrancy. It was disorderly conduct. Q. It was disorderly conduct, but the charge was vagrancy, wasn't it? A. No. . . . Q. (by Mr. Kirby) On July 11, 1943, in King County, in the City of Seattle, under the name of Violet M. Baytec, were you not convicted of disorderly conduct, and given a 30-day suspended sentence? A. That's right, yes. Q. Upon these charges, Mr. Levinson, Mrs. Stevick's attorney, represented you? MR. GARVIN: Just a moment. THE COURT: Sustained. MR. LEVINSON: Counsel knows better. I think the jury should be instructed— THE COURT: Yes. Disregard that. Counsel has a right to represent a client. MR. KIRBY: If the Court please, that is not the question. The purpose is not to cast any aspersion on counsel, but the purpose is to show the connection. The purpose of this question is perfectly legitimate, to show

the friendship and relationship between her and Mrs. Stevick. THE COURT: The fact that they have the same counsel? No. Sustained. MR. KIRBY: *Works in the same place; arrest comes from the same house; same counsel representing them. . . .*" (Italics ours.)

This court has on frequent occasions passed upon questions concerning the conduct of counsel in civil and criminal cases. In *State v. Montgomery*, 56 Wash. 443, 105 Pac. 1035, a conviction was reversed because of questions and statements asked by the prosecuting attorney.

In *State v. Devlin*, 145 Wash. 44, 258 Pac. 826, the prosecuting attorney put the fact before the jury that the defendant's picture was in the "rogue's gallery." This court reversed the conviction of the defendant upon the ground that the evidence was of a prejudicial nature.

In *State v. Carr*, 160 Wash. 83, 294 Pac. 1016, this court held that it was reversible error for the prosecuting attorney to persistently disregard rules of court and attempt, by improper questions, to bring before the jury incompetent and irrelevant matters.

In *State v. Tweedy*, 165 Wash. 281, 5 P. (2d) 335, a judgment of conviction was reversed because of the conduct of the prosecuting attorney in asking repeated questions concerning the whereabouts of a witness, after the trial court had ruled against the admission of the evidence.

In *State v. Sang*, 184 Wash. 444, 51 P. (2d) 414, reversal was caused because of the statement of the deputy prosecuting attorney that the defendant had "a general reputation as a gambler."

This court, in *State v. Smith*, 189 Wash. 422, 65 P. (2d) 1075, held as reversible error the action of the state's attorney in attempting to show that the defendant had left the Marine Corps under circumstances detrimental to him, after the trial court had held the evidence inadmissible.

In *Warren v. Hynes*, 4 Wn. (2d) 128, 102 P. (2d) 691, the defendant was asked on cross-examination if he made his living by stealing automobiles and "holding up" people. Judgment was reversed because of the conduct of counsel

in asking the question to which we have just referred. In passing, this court stated:

"Evidence of particular acts of misconduct which tends to disgrace a witness cannot be elicited from such witness on cross-examination for the purpose of impeaching him, any more than it can by the testimony of other witnesses."

■ A study of the foregoing cases demonstrates that reference to specific acts of misconduct cannot be made to expose the witness to ridicule or to discredit him in the minds of the jury. The conduct upon which we have reversed judgments in the above cases was mild compared to the actions of the state's attorney in this case. By repeated questions the deputy prosecuting attorney accused appellant of being a prostitute. Not only that, but he made the same accusation concerning one of appellant's witnesses. The state did not attempt to prove former convictions indicated by the questions. In this day in which criminal records are quite complete and available to all prosecuting officials, there is no excuse for asking questions concerning former convictions at random.

A new trial must be granted to appellant.

Inasmuch as this case will probably be tried again, we deem it necessary to pass upon the other alleged errors of which appellant complains.

■ Counsel for appellant press upon us error of the trial court in giving an instruction relating to the flight of appellant. The basis of the claim of error is that there was no evidence to justify the giving of the instruction. The evidence shows that immediately after the accident appellant stated, as one witness put it, "Don't leave me now. Don't leave me now. I'm leaving." Appellant then went towards some wood and coal yards located across the street east of the place of the accident. She crossed the yards and arrived at a point across the street from the Moon Mullins tavern, a distance of several hundred feet from where her car had stopped. Appellant then went to the room of a friend and asked him to "get" her husband. July 3, 1944, appellant was arrested at the police station

when she called to inquire concerning the car, which had been impounded.

We're satisfied that the evidence warranted the giving of the instruction. *State v. Stentz,* 33 Wash. 444, 74 Pac. 588; *State v. Deatherage,* 35 Wash. 326, 77 Pac. 504; *State v. Ito,* 129 Wash. 402, 225 Pac. 63.

■ The last assignment of error relates to the giving of instructions Nos. 4, 5, 6, and 7. We are unable to consider an objection to instruction No. 7 for the reason that no exception was made to it. The other instructions read as follows:

"No. 4. I instruct you that the laws of the State of Washington pertaining to the operation of motor vehicles, among other things, provide as follows: Rem. Rev. Stat., Section 6360-64. '(1) Every person operating or driving a vehicle of any character upon the public highways of this state shall operate the same in a careful and prudent manner and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, taking into account the amount and character of the traffic, weight of vehicle, grade and width of high-way, condition of surface and freedom of obstruction to view ahead and consistent with any and all conditions existing at the point of operation so as not to unduly or unreasonably endanger the life, limb, property or other rights of any person entitled to the use of such public high-ways; . . .'

"No. 5. I instruct you that it is the duty of every operator of a motor vehicle to obey the laws of the state of Washington pertaining to the operation of motor vehicles.

"No. 6. The term 'to operate in a reckless manner,' when used in connection with the operation of a motor vehicle over and along the public highways of this state, is defined to mean the operation of a motor vehicle in a heedless, careless or rash manner or in a manner indifferent to consequences. It is a disregard for the safety of persons or property."

■ Appellant argues that the trial court did not require the state to prove its case to the full measure of the statutory definitions, but injected the doctrine of ordinary negligence, which had the effect of basing a conviction upon that negligence. It is contended that the definition

contained in instruction No. 6 should have defined the phrase "operate a vehicle in a reckless manner" to be willful or wanton disregard for the safety of persons or property. The last contention is based upon the provision of Rem. Rev. Stat., Vol. 7A, § 6360-118 [P.P.C. § 295-87], which defines the words "operate in a reckless manner" to be in such manner as to indicate either a willful or wanton disregard of the safety of persons or property.

This court has considered these questions in *State v. Dickert,* 194 Wash. 629, 79 P. (2d) 328, and *State v. Hedges,* 8 Wn. (2d) 652, 113 P. (2d) 530. In the latter case this court considered the proposition as to whether a conviction could be had, or a death was caused, "by the failure of the accused to use ordinary caution in performance of a lawful act by lawful means and without unlawful intent." After citing and commenting upon many decisions, it was decided:

"After careful consideration, we are convinced that the statute referred to does not require a finding by the jury that the accused was guilty of gross negligence, before a conviction may be had. Under this statute, a finding that an accused was guilty of ordinary negligence supports a conviction."

In the *Dickert* case, we had for consideration Rem. Rev. Stat., Vol. 7A, § 6360-120, the same statute under which appellant was charged in this case and § 6360-118, referred to by appellant. After setting out Rem. Rev. Stat., Vol. 7A, § 6360-118, this court stated:

"It will be observed that, by this section, to operate a motor vehicle in a reckless manner means that the operation be in such a manner as to indicate 'either a willful or wanton disregard' for the safety of persons or property. The language 'willful or wanton disregard' does not appear in § 120, which defines, as stated, the crime of negligent homicide, the section upon which the charge in this case was based."

The cases to which we have just referred announce rules that apply to the charge, the evidence, and the instructions given by the trial court in the instant case.

■ Appellant makes an argument that the court erred in not giving several proposed instructions. We cannot consider that contention for the reason that no error was assigned in appellant's brief concerning the refusal of the court to give the instructions. However, we have read the instructions, given and proposed, and conclude that those given were proper and fully advised the jury concerning the law.

The judgment will be reversed, with instructions to grant the appellant a new trial.

BEALS, C. J., BLAKE, and ROBINSON, JJ., concur.

MALLERY, J. (concurring specially)—I do not agree with the reasons given for the reversal of the judgment. The only question objected to, and hence the only one to be considered, was: "When you were in Vancouver, B. C., on June 25, 1924, *were you not convicted there,* charged with working in a house of prostitution and charged with vagrancy, and fined twenty-five dollars or thirty days?"

This question was proper. See *State v. Brames,* 154 Wash. 304, 282 Pac. 48, in which the court said:

"Equally without merit is the assignment that the court erred in permitting the prosecuting attorney to cross-examine the appellants regarding the nature and details of prior convictions."

It quoted with approval *State v. Steele,* 150 Wash. 466, 273 Pac. 742, as follows:

"Moreover, it is the common knowledge of every one conversant with the criminal statutes that acts are denounced by them as crimes, the conviction of which would have but little, if any, bearing on the weight of the testimony of the person convicted, given in another cause, while there are others of a nature so depraved that a conviction for their violation would be to put the perpetrator beyond the pale of consideration in the minds of all right-thinking people."

Cross-examination as to the nature of the offense is particularly pertinent where the charge is vagrancy, since it includes in its fourteen definitions a very wide range, running all the way from a "person practicing or soliciting

prostitution or keeping a house of prostitution" to a "healthy person who solicits alms." See Rem. Rev. Stat., § 2688 [P.P.C. § 118-269].

The rule that a witness may not be cross-examined as to particular acts of misconduct, does not conflict with the rule that he may be cross-examined as to former convictions. If the witness was convicted of a particular act of misconduct, he may be cross-examined as to the nature of the charge upon which he was convicted, because different charges may properly be given different weight in affecting his credibility. Any issue as to guilt is foreclosed by the conviction, and cross-examination as to the evidence that sustained the charge would therefore be improper; but there is no need to confuse this with cross-examination as to the nature of the charge. The rule with regard to particular acts of misconduct applies where there was no conviction for them. However, prostitution is not a particular act of misconduct. It is rather a course of conduct. Thus a witness may not be cross-examined as to a particular act of prostitution, but may be asked if she is a prostitute.

See *State v. Coella*, 3 Wash. 99, 28 Pac. 28, to the effect that a witness may be asked on cross-examination, for the purpose of impeaching her credibility, whether she is a prostitute, without regard to conviction thereof, and it is error for the court to sustain an objection thereto, unless the witness claims the privilege of refusing to answer on the ground of incriminating herself.

Notwithstanding the fact that it would have been proper to ask the witness if she was a prostitute, she was not asked that question. She was cross-examined as to the nature of the charge upon which she had admitted conviction on direct examination. Such examination does not "accuse appellant of being a prostitute." It is not misconduct. Timely objections to misconduct of counsel are as essential to an assignment of error based thereon as are objections based on the inadmissibility of evidence. In any event, misconduct of counsel cannot be predicated upon the ask-

ing of proper questions; and the cases cited, although not in point, do not negative this.

The state need not prove former convictions by official records because it cross-examines upon the subject. It is not the law that "there is no excuse for asking questions concerning former convictions at random." Rem. Rev. Stat., § 2290 [P.P.C. § 112-69], provides:

"Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, either by the record thereof, *or a copy of such record duly authenticated by the legal custodian thereof, or by other competent evidence, or by his cross-examination, upon which he shall answer any proper question relevant to that inquiry,* and the party cross-examining shall not be concluded by his answer thereto." (Italics mine.)

However, I think appellant's third assignment of error is well taken and that the judgment should be reversed and the cause remanded for a new trial.

Negligent homicide by means of a motor vehicle is not a common-law crime. It is made so by statute. As was said in 5 Am. Jur. 924, §§ 787, 788:

"In view of the frequency of tragedies in connection with the operation of motor vehicles, legislation on the subject has been deemed desirable, . . .

"If a person drives his automobile in such a manner as *to violate the laws in respect thereto, and while so doing* strikes another and causes his death, he may be prosecuted for murder or manslaughter—in most cases, the latter." (Italics mine.)

Speaking of the general theory concerning crimes predicated upon being committed while one is engaged in the commission of another and separate offense, we have three such in this state that are related to the killing of a human being. Rem. Rev. Stat., § 2392 [P.P.C. § 117-5], defines first-degree murder. In paragraph (3) it provides:

"Without design to effect death, by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a robbery, rape, burglary, larceny or arson in the first degree;"

Rem. Rev. Stat., § 2393 [P.P.C. § 117-7], defines second-degree murder and in paragraph (2) thereof, it provides:

"When perpetrated by a person engaged in the commission of, or in an attempt to commit, or in withdrawing from the scene of, a *felony* other than those enumerated in section 2392." (Italics mine.)

Rem. Rev. Stat., Vol. 7A, § 6360-120 [P.P.C. § 295-93], provides in part as follows:

"When the death of any person shall ensue within one year as a proximate result of injury received by the operation of any vehicle by any person *while* under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle." (Italics mine.)

In *State v. Diebold*, 152 Wash. 68, 277 Pac. 394, the defendant was charged with second-degree murder for the killing of a human being by an automobile while engaged in feloniously taking the automobile and withdrawing from the scene thereof. In reversing the judgment, this court held that the evidence showed that, at the time of the killing, the defendant was returning the automobile to its owner and hence was not engaged in taking it or in withdrawing from the scene. The court said:

"As to when a homicide may be said to have been committed in the course of the perpetration of another crime, the rule is laid down in 13 R. C. L. 845, as follows:

" 'It may be stated generally that a homicide is committed in the perpetration of another crime, when the accused, intending to commit some crime other than the homicide, is engaged in the performance of any one of the acts which such intent requires for its full execution, and, while so engaged, and within the *res gestae* of the intended crime, and in consequence thereof, the killing results. . . .'

"The question before us is not whether appellant was guilty of any crime, but whether or not the evidence supports the verdict of guilty of a particular crime, to wit, that of murder in the second degree.

"We are compelled to hold that appellant was charged under the wrong section of the statute, and that the tes-

timony does not support the verdict of guilty of murder in the second degree."

It therefore appears that, if the defendant is not shown to have been engaged in the commission of the other offense when the killing occurred, the requirements of the statute are not satisfied.

In *State v. Barton,* 5 Wn. (2d) 234, 105 P. (2d) 63, the defendant had been acquitted of murder in the first degree and was later convicted of the identical robbery during the commission of which he had been charged with having committed the first-degree murder. His conviction for robbery was sustained against his plea of *res judicata* and former jeopardy. The court said:

"The victim of the robbery need not be the same person as the victim of the homicide, and the robbery may be committed in one jurisdiction and the killing take place in another, the only connection between them being the circumstance of the defendant's flight from the place of the one to the scene of the other. See *State v. Ryan,* 192 Wash. 160, 73 P. (2d) 735. The robbery is not necessarily directly included as an integral part of the murder, but is only incidentally related thereto.

"In *State v. Ryan, supra,* the defendant was charged with murder in the first degree while engaged 'in the commission of a larceny and while engaged in withdrawing from the scene of a robbery and a burglary,' and this court, holding that it was not necessary to set out in the information the facts in connection with the commission of the related felonies, said:

"'As to the information, the appellant says that it is defective because it did not set out therein the elements of larceny, robbery and burglary. But this was not necessary. The charge of withdrawing from the scene of a robbery and burglary was incidental to the primary charge of murder in the first degree, and such incidental matters need not be set out.'"

Thus it appears that the crime during the commission of which the killing occurred is a separate offense and only related incidentally to the homicide and need not be alleged otherwise in the information. This latter is con-

firmed in *State v. Dickert,* 194 Wash. 629, 79 P. (2d) 328, where, in passing upon the demurrer to the sufficiency of the information, the court said:

"The principal question presented upon the appeal, as it appears to us, is whether the second count of the information charged a crime. That count was based upon § 120 of chapter 189, Laws of 1937, p. 911, which is one of the sections of the motor vehicle act. . . .

"The appellant says that § 118, p. 910, of the same act should be read and applied in connection with § 120. In § 118, reckless driving is defined as follows:

" 'It shall be unlawful for any person to operate a motor vehicle in a reckless manner over and along the public highways of this state. For the purpose of this section to "operate in a reckless manner" shall be construed to mean the operation of a vehicle upon the public highways of this state in such a manner as to indicate either a willful or wanton disregard for the safety of persons or property.' Rem. Rev. Stat., Vol. 7A, § 6360-118 [P. C. § 2696-876]."

Under the theory of this type of crime, the state is not required to prove intent or negligence, and though the facts show neither, the killing while engaged in the other specified offenses, suffices. Thus the killing of a human being by an automobile properly driven, would nevertheless constitute negligent homicide by means of a motor vehicle if the driver was intoxicated, and contributory negligence or lack of negligence as the proximate cause would not be a defense. The case is otherwise, and negligence must be shown, when manslaughter is alleged under Rem. Rev. Stat., § 2390, as in the case of *State v. Hedges,* 8 Wn. (2d) 652, 113 P. (2d) 530, where the defendant had shot and killed a human being while hunting deer. The court said:

"After careful consideration, we are convinced that the statute referred to does not require a finding by the jury that the accused was guilty of gross negligence, before a conviction may be had. Under this statute, a finding that an accused was guilty of ordinary negligence supports a conviction. If it be desirable that the law be amended by requiring a finding of gross negligence, that matter is within the province of the legislature."

Thus the legislature in enacting Rem. Rev. Stat., Vol. 7A, § 6360-120, defined a new offense not included under Rem. Rev. Stat., § 2390 [P.P.C. § 117-1], which requires proof of negligence. It defined one that required no proof of negligence at all provided the state can prove that the offense of drunken or reckless driving was incidental to it.

This being the case, the rules of proximate cause and negligence governing tort actions are not applicable in criminal actions brought under the statute here involved. When the state can show negligence as the proximate cause of the death, but cannot show drunken or reckless driving, Rem. Rev. Stat., § 2390, will sustain its charge of manslaughter if brought thereunder. When the state can prove drunken or reckless driving even though they are not the proximate cause of the killing, it can sustain its charge if brought under Rem. Rev. Stat., Vol. 7A, § 6360-120.

The state has its election as to which statute it desires to inform under, but the existence of this election does not give the state the right to allege an offense under one statute and sustain a conviction upon proof of the other. In this case, the state elected to bring the information under Rem. Rev. Stat., Vol. 7A, § 6360-120. It was required to prove that death ensued within a year as the proximate result of an injury which occurred while the defendant was driving in a reckless manner.

Because some acts may constitute both reckless driving and negligence, it does not follow that the terms are synonymous and interchangeable. The court's instruction defined operation in a negligent manner, but did not give the statutory definition of operating in a reckless manner. Rem. Rev. Stat., Vol. 7A, § 6360-120. It was required to part:

"The offense of operating a vehicle in a negligent manner shall be considered to be a lesser offense than, but included in, the offense of operating a vehicle in a reckless manner, and any person charged with operating a vehicle in a reckless manner may be convicted of the lesser offense of operating a vehicle in a negligent manner. Any

person violating the provisions of this section will be guilty of a misdemeanor: *Provided,* The Director of Licenses shall not revoke any license under this act."

It is clear that, as the state was required to prove operation in a reckless manner, it was error for the court to instruct that operation in a negligent manner, an included and lesser offense, was sufficient.

The state relies upon *State v. Hedges, supra,* and *State v. Dickert, supra.* In the *Hedges* case, the information was brought under Rem. Rev. Stat., § 2390. It is therefore not controlling in this case, which is brought under Rem. Rev. Stat., Vol. 7A, § 6360-120.

The *Dickert* case is in point, but it was decided prior to the enactment of Rem. Rev. Stat., Vol. 7A (Sup.), § 6360-118½, quoted above. At that time there was no distinction between reckless and negligent driving. Its principal concern was the sufficiency of the information. With its holding on that point, I am in accord. If it be thought to be in conflict with the principles I have discussed, I am in favor of overruling it to that extent.

The judgment should be reversed and the cause remanded for a new trial.

---

September 14, 1945. Petition for rehearing denied.