[No. 62404-6.   En Banc.   June 1, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. SIMON B. RIVAS, *Appellant*.

444

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Laura Hayes, Deputy,* for respondent.

MADSEN, J. — Following his jury conviction for vehicular homicide by intoxication, Appellant Simon Rivas (Rivas) moved for arrest of judgment because the information did not include the nonstatutory element of a causal connection between intoxication and death. The trial judge denied the motion and Rivas appealed in Division One of the Court of Appeals. We accepted certification from that court and now hold that causation between intoxication and death is not an element of vehicular homicide.

## FACTS

On August 28, 1992, Rivas was the driver in a 1-car accident which left the passenger dead. Before the accident, Jeff Schroeder, a neighbor living on Haynie Road in Whatcom County, heard what he described as a loud vehicle accelerating toward his home. Schroeder was the first to arrive at the scene and found the Rivas vehicle in the ditch. He also found a "gal" lying face down on the pavement. Verbatim Report of Proceedings, at 25. At approximately the same time another neighbor, Peter Len, opened his door to Rivas, who asked for his help. Rivas claimed he had been in an

accident and his girlfriend had flown out of the car. Len's wife called 911 while he accompanied Rivas to the accident scene. Rivas told Len he had been drinking and Len smelled alcohol on Rivas. Emergency personnel arrived quickly but could not revive the passenger, Heather Nihoul, who was pronounced dead at the scene.

The first officer to arrive, Trooper Clint Casebolt, observed that Rivas was unsteady, swaying slightly; that his eyes were bloodshot and watery; and that his speech was somewhat slurred and disjointed and that he smelled strongly of intoxicants. The trooper administered field sobriety tests which Rivas performed poorly. The trooper also had blood drawn from Rivas and a later analysis indicated a blood alcohol concentration (BAC) of .15 percent.

Rivas was charged with vehicular homicide by information filed on September 8, 1992. The information was amended on March 22, 1993, and alleged as follows:

### Vehicular Homicide

That the defendant, SIMON B. RIVAS, then and there being in said County and State, on or about the 28th day of August, 1992, did drive a motor vehicle, and said driving was the proximate cause of injury . . . and the defendant, SIMON B. RIVAS, was under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, at the time of such driving and of the injuries to HEATHER M. NIHOUL, in violation of RCW 46.61.520, said crime being a Class "B" felony; contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State of Washington.

Clerk's Papers, at 72-73. Rivas entered a plea of "not guilty" and the case proceeded to trial.

At the close of the State's case the defense moved for dismissal based on a defect in the information. The defense contended that it failed to allege the element of a causal connection between the Defendant's intoxication and the victim's injury as required by *State v. MacMaster*, 113 Wn.2d 226, 778 P.2d 1037 (1989).

Although the trial court agreed that a causal connection between intoxication and death is required, it found that

the information here was sufficient to notify the Defendant "that he was charged with driving in an intoxicated state, and that the combination of the driving and the intoxication was a proximate cause of injury and subsequently death". Verbatim Report of Proceedings, at 398. Following a guilty verdict, Rivas moved for arrest of judgment which was denied. Rivas appealed, relying on Division Three's recent decision in *State v. Salas*, 74 Wn. App. 400, 873 P.2d 578 (1994). Division One certified *State v. Rivas* suggesting the following questions: (1) in a prosecution for vehicular homicide, must the State prove a causal connection between the driver's intoxication and the fatal injury? and (2) if so, was the information constitutionally sufficient where it failed to specifically allege that causal connection as an essential element of the charged crime? This court also granted a petition for review filed in *Salas* and the two cases were set for hearing as companion matters.

## ANALYSIS

To resolve this case it is helpful to review the history of the vehicular homicide statute in this state. The Legislature first enacted a statute relating to traffic death caused by the operation of a motor vehicle in 1937 when it passed the Washington Motor Vehicle Act. Laws of 1937, ch. 189, § 120, p. 911. Before that enactment prosecution for traffic deaths was brought under the manslaughter statute. *State v. Costello*, 59 Wn.2d 325, 334, 367 P.2d 816 (1962) (Foster, J., concurring specially). As originally enacted, the Washington Motor Vehicle Act set out the crime of driving under the influence in the first section of the act. In the next section following the crime of driving under the influence, the Legislature established that

> [w]hen the death of any person shall ensue within one year as a proximate result of injury received by the operation of any vehicle by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such

vehicle shall be guilty of negligent homicide by means of a motor vehicle.

Laws of 1937, ch. 189, § 120, p. 911.

In one of this court's earliest opinions addressing the negligent homicide section of the Motor Vehicle Act, *State v. Stevick*, 23 Wn.2d 420, 161 P.2d 181 (1945), *overruled in part by State v. Partridge*, 47 Wn.2d 640, 289 P.2d 702 (1956), Justice Mallery noted in a special concurrence that

> [u]nder the theory of this type of crime [negligent homicide], the state is not required to prove intent or negligence, and though the facts show neither, the killing while engaged in other specified offenses, suffices. Thus the killing of a human being by an automobile properly driven, would nevertheless constitute negligent homicide by means of a motor vehicle if the driver was intoxicated, and contributory negligence or lack of negligence as the proximate cause would not be a defense.

*Stevick*, at 433 (Mallery, J., concurring specially). In support of that conclusion Justice Mallery quoted 5 Am. Jur. *Automobiles* §§ 787, 788, at 924-25 (1936) as follows:

> "In view of the frequency of tragedies in connection with the operation of motor vehicles, legislation on the subject has been deemed desirable, . . .
>
> "If a person drives his automobile in such a manner as *to violate the laws in respect thereto, and while so doing* strikes another and causes his death, he may be prosecuted for murder or manslaughter — in most cases, the latter."

*Stevick*, at 430 (Mallery, J., concurring specially). The special concurrence also pointed to other statutory crimes (such as felony murder) which are based on the theory that crimes may be "predicated upon being committed while one is engaged in the commission of another and separate offense . . .". *Stevick*, at 430 (Mallery, J., concurring specially).

Justice Mallery's view was later adopted in a concurring opinion by Justice Foster in *Costello*. Without discussion, the majority in that case approved a trial court's instructions which required the State, in a charge of negligent homicide, to prove a causal connection between the defendant's intoxication and the act producing the fatal accident. *Costello*, at 327. Although the question of whether the State

was required to prove a causal connection between a driver's intoxication and the fatal injury was not discussed by the majority in that case, Justice Foster nevertheless argued that the instruction was erroneous because it placed such a burden on the State.

> It cannot be overemphasized that the crime is committed if the fatal accident occurs while the driver of the car is under the influence of intoxicating liquor. It is no defense that the injury is not the proximate result of intoxication. The words "proximate result" refer only to the death being the result of an injury received while the driver is under the influence of intoxicating liquor.

*Costello*, at 333 (Foster, J., concurring specially). Citing the discussion by Justice Mallery in *Stevick*, Justice Foster pointed out that the "predominant purpose of the statute is to prohibit drunken driving". *Costello*, at 335 (Foster, J., concurring specially). He noted that the Legislature did not require the State to prove that intoxication is the proximate cause of the death but only that the driver be under the influence of liquor at the time. *Costello*, at 335-36 (Foster, J., concurring specially).

Later, in *State v. Hardwick*, 74 Wn.2d 828, 447 P.2d 80 (1968), this court commented that a majority of the court disagreed with Justice Foster's view in *Costello* that the instruction was erroneous because it required a causal relationship between the intoxication and the act producing the fatal accident. *Hardwick*, at 830-31. *Hardwick* went on, however, to approve an instruction which permitted a conviction if the State proved that the defendant operated a motor vehicle while under the influence of intoxicants and "[t]hat as a proximate result of said operation of an automobile" a death ensued. *Hardwick*, at 829. This court next spoke on this issue in *State v. Engstrom*, 79 Wn.2d 469, 487 P.2d 205 (1971), where it stated that

> [b]efore a person can be convicted of the charge of negligent homicide, there must a causal connection between the act complained of and the death of the person involved, so that it

can be said that the act was a proximate cause of the resultant death.

*Engstrom*, at 474. The *Engstrom* court approved an instruction which stated that the defendant could be convicted of negligent homicide if he operated a motor vehicle while under the influence of intoxicants and, as a result of such act, struck and killed another. *Engstrom*, at 473. Citing to *Hardwick*, the court rejected the defendant's theory that the instruction erroneously failed to require a causal connection between intoxication and death. *Engstrom*, at 474. The court found that the instruction properly informed the jury "that in order to find the defendant guilty of negligent homicide, it was necessary that his act or acts of operating a vehicle while affected by or under the influence of intoxicating liquor proximately caused the mortal injuries". *Engstrom*, at 474.

Not until a discussion by the Court of Appeals did any Washington majority opinion address the dichotomy between the language of the negligent homicide statute and the court-imposed requirement that the State prove a causal connection between intoxication and death. Citing *Hardwick* and *Engstrom*, the Court of Appeals in *State v. Mearns*, 7 Wn. App. 818, 826, 502 P.2d 1228 (1972), *review denied*, 81 Wn.2d 1011 (1973) observed that those cases required the State to prove a connection between intoxication and injury. The court noted, however, that the language of the statute did not. *Mearns*, at 826. The only causal connection in the statute was between driving and death. *Mearns*, at 826.

In 1983, the Legislature amended the negligent homicide statute (RCW 46.61.520) and, among other changes, retitled the crime "vehicular homicide". In amended form the statute read as follows:

> (1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug, as defined by RCW 46.6-1.502, or by the operation of any vehicle in a reckless manner

or with disregard for the safety of others, the person so operating such vehicle is guilty of vehicular homicide.

Laws of 1983, ch. 164, § 1, p. 719.

The issue of causal connection between intoxication and death was raised again following the 1983 amendment. In *MacMaster*, this court was asked to decide whether the new vehicular homicide statute required the State to prove such a causal link. Before answering the question, the *MacMaster* court expressed the concern that a literal interpretation of RCW 46.61.520 would result in "strict liability". *MacMaster*, at 231. It then concluded that under the 1983 amendment, the State was required to prove the connection since the amendment evinced no legislative intent to alter the court-imposed causation requirement. *MacMaster*, at 232. The court cited a number of the prior Washington cases outlined above but provided no support or analysis for its conclusion that a strict liability result must be avoided.

Justice Durham, concurring in the result, argued that by explicitly incorporating the DWI statute (RCW 46.61.502) in the 1983 amendment, the Legislature intended to punish drunken driving resulting in death and thus did not include a requirement that the State prove a connection between intoxication and the death and cited *Micinski v. State*, 487 N.E.2d 150, 153-54 (Ind. 1986) to illustrate her view.

> Under this statute there is an inherently dangerous activity in which it is reasonably foreseeable that driving while intoxicated may result in the death of an individual. The legislature has determined this activity so inherently dangerous that proof of it need not require causal connection between the defendant's intoxication and the death.

*MacMaster*, at 238 (Durham, J., concurring) (quoting *State v. Caibaiosai*, 122 Wis. 2d 587, 594, 363 N.W.2d 574 (1985)). She then invited the Legislature to clarify its intent. *MacMaster*, at 239.

In 1991, the Legislature again amended RCW 46.61.520 which now provides as follows:

(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:

(a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or

(b) In a reckless manner; or

(c) With disregard for the safety of others.

Rivas argues that because the Legislature has not expressly manifested any intent to overrule *MacMaster* in its 1991 amendment, proof of the nonstatutory causal element is still part of the State's burden.

When interpreting a statute the primary objective is to carry out the intent of the Legislature. *State v. Young*, 125 Wn.2d 688, 694, 888 P.2d 142 (1995). In doing so, the court first considers the language of the statute. *Young*, at 694. When it amended RCW 46.61.520 in 1991 the Legislature did not add the *MacMaster* element to the statute nor did it specifically indicate that the amendment was intended to overrule the *MacMaster* decision. The Legislature did state, however, as clearly as possible, that the only causal connection which the State is required to prove is the connection between the act of driving and the accident. The amendment describes three circumstances in which punishment will be imposed if the act of driving proximately causes death: when the defendant is operating a motor vehicle (1) while under the influence of intoxicating liquor or any drug; (2) in a reckless manner; or (3) with disregard for the safety of others. *See* RCW 46.61.520. The language of the amendment indicates that the Legislature did not intend that a causal connection such as that described in *MacMaster* be incorporated into the 1991 amendment.

Following the 1991 amendment, the comment to the revised pattern instruction on vehicular homicide states that "[t]hese amendments appear to modify State v. MacMaster, supra, by changing the causal connection element from a causal connection between the defendant's intoxicated condition and the

victim's death to a causal connection between the defendant's operation of a motor vehicle and the victim's death". 11A Wash. Prac., *Wpic 90.02* cmt. at 157 (1994). This comment, while not binding authority, accords with the legislative intent apparent in the amendment.

Further, there is no need to read into the 1991 amendment the causal connection which was engrafted onto the vehicular homicide statute in *MacMaster*. The *MacMaster* causal element was added by the court because of its concern with the strict liability results of a literal reading of that statute. *MacMaster*, at 231. Both this court and the United States Supreme Court have recognized, however, that the Legislature may create strict liability crimes—crimes which include no culpable mental state. *See State v. Cleppe*, 96 Wn.2d 373, 380, 635 P.2d 435 (1981) (intent or knowledge not an element of unlawful possession of drugs), *cert. denied*, 456 U.S. 1006 (1982); *State v. Stroh*, 91 Wn.2d 580, 583-84, 588 P.2d 1182, 8 A.L.R.4th 760 (1979) (intent not an element of witness tampering); *Morissette v. United States*, 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240 (1952) (chronicling the history and rationale of strict liability offenses).

In fact, other state courts have interpreted their vehicular homicide statutes as strict liability laws. In *Mearns*, the court recognized that "[a]bsolute liability without a causal connection between driving while intoxicated and a collision from which death ensues has been imposed in other states". *Mearns*, at 821. The concurrence in *MacMaster* also noted decisions from other jurisdictions which similarly held that negligent homicide statutes impose absolute liability. *MacMaster*, at 237-38 (Durham, J., concurring). Most recently, the Rhode Island Supreme Court found that the General Assembly of that state had eliminated a driver's intoxication as a causal element of the offense of vehicular homicide, merely requiring that the operator of the vehicle be intoxicated at the time of the accident and the operation of the vehicle was a proximate cause of the death in question. *State*

*v. Benoit*, 650 A.2d 1230, 1233 (R.I. 1994). In its discussion, the *Benoit* court cited a number of decisions from other jurisdictions which had upheld similar statutes including: *State v. Nelson*, 119 Idaho 444, 446, 807 P.2d 1282, 1284 (Ct. App. 1991) (causation must be shown only between driving and great bodily harm); *Micinski v. State*, 487 N.E.2d 150, 154 (Ind. 1986) (causal link between only manner of driving and death or injury needed); *State v. Caibaiosai*, 122 Wis. 2d 587, 594, 363 N.W.2d 574, 577 (1985) (State does not have to prove direct causal link between a defendant's intoxication and the death but rather a causal connection between the operation of the vehicle and death). *Benoit*, at 1232. Thus, even if RCW 46.61.520, as amended in 1991, sets forth a strict liability crime, no authority has been cited indicating that strict liability is impermissible.

■ Finally, contrary to the fears expressed in *MacMaster*, it is unlikely that a defendant's "flawless" driving will result in a conviction for vehicular homicide. Under RCW 46.61.520 an intoxicated defendant may still avoid responsibility for a death which results from his or her driving if the death is caused by a superseding, intervening event. In crimes which are defined to require specific conduct resulting in a specified result, the defendant's conduct must be the "legal" or "proximate" cause of the result. 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 3.12, at 390 (1986). Before criminal liability is imposed, the conduct of the defendant must be both (1) the actual cause, and (2) the "legal" or "proximate" cause of the result. LaFave & Scott, at 392. *See State v. McAllister*, 60 Wn. App. 654, 806 P.2d 772 (1991) (conviction for vehicular homicide by intoxication reversed because the victim's negligence was superseding cause of death).

Because we conclude that RCW 46.61.520, as amended in 1991, does not require proof of a causal connection between intoxication and death, we do not reach the second question

suggested by the Court of Appeals. The judgment of the trial court is affirmed.

DURHAM, C.J., DOLLIVER, SMITH, GUY, JOHNSON, ALEXAN-DER, and TALMADGE, JJ., and UTTER, J. Pro Tem., concur.