## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

December 15, 2015

### DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46218-4-II |
| Respondent, | |
| v. | |
| RICHARD SCHMELING, | PART PUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Richard Schmeling appeals his conviction under RCW 69.50.4013 for possession of a controlled substance. He argues that RCW 69.50.4013 is unconstitutional as applied under the Eighth Amendment and under the Fourteenth Amendment's due process clause because the statute makes possession of very small amounts of a controlled substance a felony without requiring a culpable mental state; i.e., knowledge of possession or intent to possess. We disagree. In the unpublished portion of this opinion, we reject Schmeling's additional arguments. Accordingly, we affirm Schmeling's conviction and sentence.

FACTS

As part of a theft investigation, law enforcement officers searched Schmeling's car and uncovered two small baggies that contained white residue. The residue was tested and turned out to be methamphetamine. The State charged Schmeling with possession of a controlled substance.[1]

Schmeling's first trial ended in a mistrial because of a hung jury. On retrial, the jury convicted Schmeling of possession of a controlled substance. Schmeling appeals his conviction.

---

[1] Schmeling also was charged with and convicted of theft. However, he does not appeal his theft conviction.

ANALYSIS

Schmeling argues that RCW 69.50.4013 violates the Eighth Amendment prohibition of cruel and unusual punishment and the Fourteenth Amendment's guarantee of due process because it makes possession of drug residue[2] a felony without requiring any culpable mental state. We disagree.

A.    STANDARD OF REVIEW

We review constitutional challenges de novo. *In re Welfare of A.W. & M.W.*, 182 Wn.2d 689, 701, 344 P.3d 1186 (2015). Statutes are presumed constitutional. *Id.* The challenger bears the heavy burden of convincing the court that there is no reasonable doubt that the statute is unconstitutional. *Id.*

B.    EIGHTH AMENDMENT CHALLENGE

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. The basic concept of the Eighth Amendment is that punishment for a crime must be proportionate to the offense. *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). There are two types of Eighth Amendment analysis: (1) determining whether a sentence is disproportionate to the particular crime, and (2) using categorical rules to define constitutional standards for certain classes of crimes or offenders. *Graham*, 560 U.S. at 59-60.[3]

---

[2] Schmeling emphasizes that he was convicted of possessing "drug residue" rather than a larger amount of methamphetamine. Under Washington law, possession of any amount of a controlled substance will support a conviction. *State v. Higgs*, 177 Wn. App. 414, 436-38, 311 P.3d 1266 (2013), *review denied,* 179 Wn.2d 1024 (2014).

[3] Article I, section 14 of the Washington Constitution also prohibits cruel punishment. Our Supreme Court applies four factors in determining whether punishment is prohibited as cruel under article I, section 14. *State v. Witherspoon*, 180 Wn.2d 875, 887, 329 P.3d 888, *as amended*, (Aug. 11, 2014). However, because Schmeling relies only on the Eighth Amendment, we do not apply the article I, section 14 analysis.

We hold that the first approach does not support Schmeling's claim and the second approach is inapplicable here.

      1.    Proportionality Analysis

Many Eighth Amendment cases address whether a particular punishment is disproportionate to the crime. *Id.* The Eighth Amendment "does not require strict proportionality between crime and sentence" and "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring). The Court has shown a reluctance to review legislatively mandated sentences. *Rummel v. Estelle*, 445 U.S. 263, 274, 100 S. Ct. 1133, 63 L. Ed 2d 382 (1980). As a result, successful challenges to the proportionality of sentences are "exceedingly rare." *Id.* at 272.

Here, Schmeling does not challenge the length of his sentence. Instead, he argues that classifying possession of small amounts of a controlled substance as a felony without a mens rea requirement constitutes cruel and unusual punishment. Our Supreme Court rejected a similar argument in *State v. Smith*, 93 Wn.2d 329, 345, 610 P.2d 869 (1980). Smith was convicted of possession of more than 40 grams of marijuana, which was punished as a felony. *Id.* at 332. He argued that the seriousness of the offense did not warrant classifying his crime as a felony. *Id.* at 342. The court rejected Smith's argument, noting that it was unaware of any authority supporting the proposition that classification alone could constitute cruel and unusual punishment. *Id.* at 342, 345. The court also held that Smith's actual sentence was not grossly disproportionate to his offense. *Id.* at 344-45.

Under the traditional proportionality analysis, *Smith* controls. Classification of a crime as a felony despite the absence of a mens rea requirement does not result in grossly disproportionate punishment.

2.    Categorical Analysis

The second type of Eighth Amendment analysis addresses whether a particular punishment is categorically unconstitutional given the nature of the offense or the characteristics of the offender. *Graham*, 560 U.S. at 60. This analysis involves two steps. First, the reviewing court considers " 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue." *Id.* at 61 (quoting *Roper v. Simmons*, 543 U.S. 551, 572, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)). Second, the reviewing court considers precedent and its own understanding and interpretation of the Eighth Amendment to determine in the exercise of its own independent judgment whether the punishment is unconstitutional. *Graham*, 560 U.S. at 611.

Schmeling argues that we should apply the categorical approach here. However, until *Graham*, the only cases the United States Supreme Court had addressed under this classification involved the death penalty. *Id.* at 60. In *Graham*, the Court applied the categorical approach in holding that the Eighth Amendment prohibits the imposition of a life sentence without the possibility of release on a juvenile offender who did not commit homicide. *Id.* at 61-62, 82. As our Supreme Court has recognized, the holding in *Graham* was based on the difference between juveniles and adults and the propriety of sentencing juveniles to life in prison. *State v. Witherspoon*, 180 Wn.2d 875, 890, 329 P.3d 888, *as amended,* (Aug. 11, 2014).

*Graham* stands for the proposition that the categorical analysis applies to certain punishments involving juveniles. But the Court did not hold or even suggest that the categorical

approach should be applied to all adult sentences under the Eighth Amendment. In the absence of any authority extending the categorical approach to cases not involving the death penalty or juvenile offenders, we decline to apply the categorical approach to punishment of adult drug offenders like Schmeling.[4]

We hold that under *Smith*, RCW 69.50.4013 does not violate the Eighth Amendment even though it punishes the possession of small amounts of controlled substances as a felony without imposing a mens rea requirement.

C.      DUE PROCESS CHALLENGE

The Fourteenth Amendment to the United States Constitution provides that no state may deprive a person of liberty without due process of law. We hold that RCW 69.50.4013 does not violate due process even though it makes possession of drug residue a crime without requiring any culpable mental state.

Strict liability crimes – crimes with no mens rea requirement – do not necessarily violate due process. "We do not go with Blackstone in saying that 'a vicious will' is necessary to constitute a crime, for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." *Lambert v. California*, 355 U.S. 225, 228, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957) (citation omitted). Our Supreme Court repeatedly has stated that the legislature has the authority to create strict liability crimes that do not include a culpable

---

[4] Even if the categorical analysis was applicable, Schmeling fails to demonstrate that there is a national consensus against the challenged sentencing practice. In *Graham*, the juvenile offender was able to show that 39 states did not impose a life without parole sentence for non-homicide juvenile offenses. Here, Schmeling can point to only 19 states that do not impose a felony sentence for residue controlled substance possession. Therefore, while Schmeling presents some indicia of states following the standard he asks us to adopt, he has failed to demonstrate that there is a national consensus for that sentencing standard.

mental state. *State v. Bradshaw*, 152 Wn.2d 528, 5322, 98 P.3d 1190 (2004); *State v. Anderson*, 141 Wn.2d 357, 361, 5 P.3d 1247 (2000); *State v. Rivas*, 126 Wn.2d 443, 452, 896 P.2d 57 (1995).

Our Supreme Court twice has directly addressed whether the elements of possession of a controlled substance under prior versions of RCW 69.50.4013 contains a mens rea element. *Bradshaw*, 152 Wn.2d 528; *State v. Cleppe*, 96 Wn.2d 373, 635 P.2d 435 (1981). In both cases, the court held that the legislature deliberately omitted knowledge and intent as elements of the crime and that it would not imply the existence of those elements. *Bradshaw*, 152 Wn.2d at 534-38; *Cleppe*, 96 Wn.2d at 380-81; *see also State v. Staley*, 123 Wn.2d 794, 799, 872 P.2d 502 (1994) ("The State is not required to prove either knowledge or intent to possess" a controlled substance). The court did not express any concerns in either *Bradshaw* or *Cleppe* that allowing a conviction for the possession of a controlled substance without showing intent or knowledge somehow was improper.

In *Bradshaw*, the defendant argued that the possession statute violated due process because it criminalized innocent behavior. 152 Wn.2d at 539. The court summarily rejected the argument without discussion, noting that the defendant had offered little analysis in support of the argument and had failed to cite any relevant authority to show how the statute violated substantive due process. *Id.*

Here, Schmeling cites two cases from other jurisdictions holding that a strict liability offense violated due process. *See United States v. Wulff*, 758 F.2d 1121, 1125 (6th Cir. 1985); *Louisiana v. Brown*, 389 So. 2d 48, 51 (La. 1980). However, given our Supreme Court's repeated approval of the legislature's authority to adopt strict liability crimes and the express

6

findings in *Bradshaw* and *Cleppe* that the possession of controlled substances statute contains no intent or knowledge elements, we do not find Schmeling's authority persuasive.

We hold that RCW 69.50.4013 does not violate due process even though it does not require the State to prove intent or knowledge to convict an offender of possession of a small amount of a controlled substance.

We affirm Schmeling's conviction and sentence.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

Sergeant David Chaney of the Camas Police Department identified Schmeling as the perpetrator of a theft at a convenience store. Camas police officer Jeffrey Smith subsequently radioed Chaney to report that he had spotted Schmeling driving downtown. Chaney asked Smith to stop the car so Chaney could come and interview Schmeling about the theft.

Chaney arrived a few minutes later and saw Schmeling in his car with a female passenger. Chaney had Schmeling step out of the car and then told Schmeling about the theft investigation and read him the *Miranda*[5] warnings. Chaney told Schmeling that there was a surveillance recording of him stealing male enhancement pills. Schmeling admitted to Chaney that he had stolen the pills.

Chaney arrested Schmeling for the theft and put him in Smith's patrol car, which was parked behind Schmeling's car. Chaney asked Schmeling whether he still had any of the pills

---

[5] *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

7

left. Schmeling said he had consumed the pills, but Chaney asked for permission to search Schmeling's car for any remaining stolen property. Schmeling agreed to the search, and Chaney read him *Ferrier*[6] warnings describing his right to refuse, revoke, or limit consent. Schmeling said he understood his rights and agreed to the search.

Smith then conducted the search of Schmeling's car while Schmeling remained in the patrol car. Chaney rolled the patrol car window down and stood near Schmeling so he could hear if Schmeling wanted to stop or limit the search.

Smith found a blue bag in the car. The bag contained empty male enhancement pill packing and a fanny pack that contained a glass pipe, a scale, marijuana, and two small baggies with white residue. The residue was tested and turned out to be methamphetamine.

Schmeling moved to suppress the items found during the search of his car. The trial court denied the motion.

At sentencing, the court imposed legal financial obligations (LFO) of $800 in costs for court appointed attorney fees.

## ANALYSIS

Schmeling argues that the trial court erred in denying his motion to suppress methamphetamine found in a search of his car because he did not voluntarily consent to the search, and the search of the bag and fanny pack inside the car exceeded the scope of any consent. In a statement of additional grounds (SAG), Schmeling asserts that the trial court erred in rehearing the State's motion for a continuance and that the evidence had been tampered with

---

[6] *State v. Ferrier*, 136 Wn.2d 103, 118-19, 960 P.2d 927 (1998).

between his first trial and his second trial. Finally, Schmeling argues the trial court erred in imposing LFOs without a prior finding of his ability to pay. We reject Schmeling's arguments.

A.   MOTION TO SUPPRESS METHAMPHETAMINE

Schmeling argues that the methamphetamine evidence was seized in violation of his rights under the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution because he did not freely and voluntarily consent to the search of his car, and the search of the bag and fanny pack inside the car exceeded the scope of any consent. We disagree.

1.   Legal Principles

Both the Fourth Amendment and article I, section 7 prohibit warrantless searches unless an exception applies. *State v. Weller*, 185 Wn. App. 913, 922, 344 P.3d 695, *review denied*, 183 Wn.2d 1010 (2015). The State has the burden of showing that an exception to the warrant requirement applies by clear and convincing evidence. *State v. Green*, 177 Wn. App. 332, 340, 312 P.3d 669 (2013).

One of the exceptions to the warrant requirement is consent. *State v. Monaghan*, 165 Wn. App. 782, 788, 266 P.3d 222 (2012). Valid consent must be freely and voluntarily given by a person with authority to consent, and the search must not exceed the scope of the consent given. *Id.* at 788-89.

When reviewing a trial court's denial of a suppression motion, we determine whether substantial evidence supports the trial court's findings of fact and whether the findings support the conclusions of law. *Weller*, 185 Wn. App. at 922. Substantial evidence exists when the record contains sufficient evidence to persuade a fair-minded, rational person of the truth of the

finding. *State v. Dancer*, 174 Wn. App. 666, 670, 300 P.3d 475 (2013), *review denied*, 179 Wn.2d 1014 (2014). Any unchallenged findings of fact are verities on appeal. *Id.*

We review de novo the trial court's legal conclusion that the warrantless search of a vehicle did not violate the constitution. *Monaghan*, 165 Wn. App. at 789.

2. Voluntary Consent

"Whether consent is free and voluntary is a question of fact determined by the totality of the circumstances, including (1) whether police gave *Miranda* warnings before obtaining consent; (2) the degree of education and intelligence of the consenting person; and (3) whether the police advised the consenting person of his right to refuse consent." *Dancer*, 174 Wn. App. at 676. Although the three listed factors are essential to the consent analysis, no single factor is determinative, and other relevant facts, such as coercive tactics, should be considered. *Id.*

Schmeling does not dispute that he was given *Miranda* warnings or that he was told he could refuse consent or limit the search. He also does not claim that the officers used coercive tactics. Nevertheless, Schmeling claims that he did not give voluntary consent under the totality of the circumstances. He argues that (1) the State presented no testimony regarding his education and intelligence, (2) his ability to exercise his right to stop or limit the search was impeded because he could not see the details of Smith's search and therefore could not evaluate whether to stop or limit the search when Smith looked at the bags, and (3) he would not have been able to communicate his desire to stop or limit the search because Smith was out of hearing range. We reject Schmeling's arguments.

First, the record shows that Schmeling's education and intelligence were considered during the suppression hearing. The trial court noted in its CrR 3.6 ruling[7]:

> [T]he way it's being described to me, it appears that the officer is engaged in this type of conversation and is getting appropriate responses without the showing of confusion. [The officer], of course, doesn't know if [Schmeling] got a high-school education, two years at Clark College after that, or a master's degree somewhere. But basic commands, conversations — there's nothing here that I've heard that would alert the officer that we may have an issue here about the intelligence level and the ability, intellectually, to consent.

Report of Proceedings (RP) at 34. Although brief, the trial court's finding was appropriate. The court in *Dancer* similarly stated:

> Although the police did not specifically ascertain the level of Dancer's education, [the officer] testified that he had numerous prior experiences with individuals unable to consent and that nothing about this situation indicated to him that Dancer was unable to provide voluntary consent.

174 Wn. App. at 676-77.

Second, Schmeling does not cite any authority to support his argument that his distance from the search prevents a finding that he voluntarily consented. There is no indication in the case law that whether the consenting person can actually observe the search is a relevant inquiry to voluntary consent. What is relevant is whether the officers advised Schmeling of his right to refuse consent, which they did. Schmeling was told that he could refuse consent and that he could stop or limit the search at any time.

Third, again Schmeling cites no authority to support his argument that his inability to communicate with the searching officer prevents a finding that he voluntarily consented. There is no indication in the case law that whether the consenting person can communicate with the

---

[7] The trial court did not enter written findings of fact and conclusions of law supporting its ruling as required by CrR 3.6(b), but its oral ruling is sufficiently detailed to permit our review. *See Weller*, 185 Wn. App. at 923.

searching officer is a relevant inquiry to voluntary consent. In any event, Chaney testified that he rolled the patrol car window down and stood near Schmeling so he could hear if Schmeling wanted to stop or limit the search.

Under the totality of the circumstances, Schmeling's consent was voluntary. He was given both *Miranda* and *Ferrier* warnings. He communicated with the officers appropriately and clearly, indicating that he had sufficient intelligence to understand his rights. And the fact that he could not see the search or communicate directly with the searching officer does not negate his voluntary consent. Accordingly, we hold that Schmeling voluntarily consented to the search of his car.

3.   Scope of the Search

Schmeling argues that there was no evidence that he consented to a search of the bag or fanny pack found inside his car. We disagree.

"A general and unqualified consent to search an area for particular items permits a search of personal property within the area in which the material could be concealed." *State v. Mueller*, 63 Wn. App. 720, 722, 821 P.2d 1267 (1992). *Mueller* concerned whether consent to search a car for guns and drugs permitted the search of a zipped gym bag inside the car. *Id.* It was undisputed on appeal that Mueller had given valid consent to a general, unqualified search of his car for drugs and guns. *Id.* at 722. Division One of this court held that the search of the gym bag did not exceed the scope of the consent under either the Fourth Amendment or article I, section 7 because the gym bag reasonably could have contained the objects of the search. *Id.* at 723-24.

On the other hand, in *State v. Monaghan* the question was whether opening a locked safe found in the trunk of a car exceeded the scope of consent to search the trunk. 165 Wn. App. at 789. Monaghan had given an officer consent to search his trunk and chose not to stop or limit

the search, despite being aware of his right to do so. *Id.* Inside the trunk the officer found a small, locked safe that he was able to open using a key retrieved from the driver's area of the car. *Id.* at 790. Division One of this court ruled that consent to search the trunk did not extend to the locked safe inside of it, noting that locked containers within vehicles have an added expectation of privacy. *Id.* at 791. The search of the locked safe without warrant or specific consent violated Monaghan's rights under the Washington Constitution. *Id.*

*Mueller* applies here rather than *Monaghan*. Because the bag and fanny pack were not locked containers, a search of them would not require a warrant or specific consent as was needed in *Monaghan*. Whether Schmeling's consent extended to the bag and fanny pack then turns on whether they reasonably could have contained the objects of the search: male enhancement pills. Because both the bag and the fanny pack were large enough to contain the small pill packets, the consent to search the car for the packets extended to those items within the car. Therefore, we hold that the search did not exceed the scope of consent.

Because Schmeling voluntarily consented and the search did not exceed the scope of his consent, we hold that the search did not violate Schmeling's constitutional rights.

B.     SAG CLAIMS

Schmeling presents two arguments in his SAG: (1) the trial court erred in rehearing a motion for continuance for the retrial, and (2) evidence was tampered with between the first trial and second trial. We reject both arguments.

1.     Motion for Continuance

Schmeling argues that the trial court erred in allowing the State to bring a second motion for continuance after another judge denied the first motion for continuance. We disagree.

13

CrR 8.2 specifies that "CR 7(b) shall govern motions in criminal cases." CR 7(b) does not prohibit a second judge's consideration of a motion after another judge has denied the first motion. Clark County LR 7(b)(1)(B) prohibits a second judge from considering a motion denied by another judge based on the same facts, but does allow a subsequent motion before a different judge based on different facts.

Here, Judge Lewis held the readiness hearing for Schmeling's retrial on April 3, 2014. He then heard the State's motion for continuance based on the unavailability of a State's witness and denied the motion. However, Judge Lewis granted the State's request for supplemental review the next day by Judge Collier, who presided over the first trial and was scheduled to hear the retrial.

The State's second motion contained more facts than the motion previously presented. It included the fact that the State had made no objection to the defense's three requests for continuance and also confirmed that all of the State's witnesses were available for the proposed new trial date. Those facts were not presented to Judge Lewis in the initial motion. Because the State presented different facts in the second motion, the motion did not violate local rules. Accordingly, we hold that the trial court did not err in allowing the State to bring a second motion for continuance.

2. Evidence Tampering

Schmeling argues that the trial court erred by (1) admitting evidence that was tampered with between the first trial and the retrial and (2) denying Schmeling's motion for dismissal based on the tampered evidence. We disagree because there is no evidence of tampering.

The record indicates that the small baggies containing methamphetamine remained in the clerk's locked exhibit room between Schmeling's mistrial and retrial. The record does not

indicate that Schmeling ever moved to dismiss as he asserts in his SAG. The record does indicate that he moved to exclude the evidence. But the trial court admitted the evidence, finding that there was no indication that the evidence had been tampered with or was in any way compromised.[8] Accordingly, we reject Schmeling's assertion.

C.      IMPOSITION OF LEGAL FINANCIAL OBLIGATIONS

Schmeling argues that the trial court impermissibly chilled his Sixth Amendment right to counsel by ordering him to pay LFOs without conducting an inquiry into his present or future ability to pay. We disagree.

Schmeling asserts that "neither party provided the court with information about Mr. Schmeling's present or likely future ability to pay attorney's fees" and that the trial court imposed LFOs "without conducting any inquiry into his present or future ability to pay." Br. of Appellant at 23. However, the trial court did consider Schmeling's ability to pay.

At sentencing Schmeling told the trial court he worked in landscaping and remodeling. Schmeling said he had not been working for a few weeks because he was injured. The State specifically asked the trial court if it was making a finding regarding future ability to pay LFOs. The trial court responded:

> I am. I mean, he's just indicated he's been working some. He hasn't the last few weeks. There's no indication to me that he's not able. I recognize right now he's not able, but the future, I — I do believe he has the ability to pay legal fees, fines, and costs.

---

[8] Schmeling asserts that the baggies were "clearly tampered with and compromised" and "obviously not in the same shape as it was in first trial." SAG at 2. The record does not mention the condition of the baggies. Because this argument relies on matters outside the record, we need not consider it. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

RP at 647. Because Schmeling did provide the trial court with information about his ability to pay and the trial court made an assessment of Schmeling's current and future ability to pay before assigning costs, we reject Schmeling's LFO challenge.

We affirm Schmeling's conviction and sentence.

MAXA, J.

We concur:

BJORGEN, A.C.J.

LEE, J.